J. C. SHERRILL AND CLEO C. SHERRILL, PETITIONERS v. N. C. STATE HIGHWAY COMMISSION; AND JEFFERSON STANDARD LIFE IN-SURANCE COMPANY, RESPONDENTS.

(Filed 18 June, 1965.)

**1. Highways § 1;    State § 4—**

The State Highway Commission is an agency of the State and ordinarily is not subject to suit except in the manner expressly authorized by statute.

**2. Same;    Eminent Domain § 1—**

Where private property is taken for a public purpose by a governmental agency having the power of eminent domain under circumstances such that no procedure provided by statute affords an applicable or adequate remedy, the owner, in the exercise of his constitutional rights, may maintain an action to obtain just compensation therefor.

**3. Highways § 4—**

When a city street becomes a part of the State highway system, the Highway Commission becomes responsible for its condition thereafter to the same extent as if originally constructed by it, and this rule applies to fills and culverts as well as to the surface areas of the highway. G.S. 136-66.1.

**4. Eminent Domain § 2—    Allegations held sufficient to state cause for taking of easement for discharge of water againt petitioners' property.**

Allegations to the effect that a street having a culvert not aligned with the natural course of the creek running through the culvert, was taken over by the State Highway Commission, that gradually the culvert became inadequate to take care of the increase in the volume of water draining into the creek, causing the water after heavy rains to back up in front of the culvert and generate pressure impelling the water with force against the

bank on the other side of the culvert, so that, after a heavy rain, the creek washed away petitioners' retaining wall and the foundation to petitioners' building, resulting in the damage in suit, *held* sufficient, the allegation of negligence aside, to allege a permanent taking of an easement to discharge water against petitioners' property, constituting a taking in the constitutional sense.

APPEAL by petitioners from *McConnell, J.,* November-December 1964 Session of IREDELL.

Petitioners own, subject to a mortgage held by Jefferson Standard Life Insurance Company, a lot in Statesville, North Carolina, fronting on the east side of South Center Street, which is also U. S. Highway No. 21. A store building thereon occupies the entire frontage of 54 feet and extends back (east) from said street (highway) approximately 95 feet.

In their petition filed March 31, 1961 petitioners alleged they were entitled to recover from the State Highway Commission (Highway Commission) compensation for damages to their said realty. Answers were filed by the Highway Commission and by said mortgage holder. Thereafter, the Highway Commission demurred to the petition. After hearing, Judge McConnell sustained the demurrer and dismissed "this proceeding." Petitioners excepted and appealed.

*Carswell & Justice and Hugh G. Mitchell for petitioner appellants.*
*Attorney General Bruton, Assistant Attorney General Lewis, Trial Attorney Rosser and R. A. Hedrick, Associate Counsel, for respondent appellee State Highway Commission.*

BOBBITT, J. Petitioners' allegations, summarized, are set forth below.

Petitioners purchased said lot and building in 1950. The Highway Commission, for many years prior to 1950, had complete control and custody and responsibility for the proper maintenance of said street (highway) in front of said realty. It maintained said street over an artificial fill across a creek. The creek flowed east, passed under the fill through a culvert; and east of said street and culvert flowed approximately ten feet south of petitioners' south property line.

After petitioners had purchased said realty, the waters draining into said creek gradually increased to such extent that during normally heavy rains said culvert was totally inadequate to carry off the flow of water in said creek. At such times, the fill obstructed the creek; and water backed up on the west side of the fill was forced through the culvert at greatly increased pressure. The culvert was constructed at such angle to the natural course of the creek that water was forced through

the culvert against the south bank of the creek east of the culvert. This washed out a deep hole and created a whirlpool, which resulted in a washing away of the north bank of the creek adjacent to petitioners' property.

Notwithstanding it knew or should have known of said facts, the Highway Commission did nothing to prevent "this washing away" of the creek banks or to provide an adequate culvert under its fill.

In March 1959, the north bank of the creek had washed away up to petitioners' property; and it became necessary for petitioners to construct "an additional retaining wall" on the south side of their building in an attempt to prevent the wall of said building from being destroyed.

Notwithstanding the Highway Commission had knowledge of said condition, "which it had created," it did nothing to prevent further damage to petitioners' property or to prevent further diversion of the waters of said creek.

A rain storm during the early morning hours of October 14, 1959 caused the creek to overflow. Water backed up on the west side of the fill was forced through the culvert under great pressure in a solid stream. This resulted in the washing away of petitioners' retaining wall and the south wall and foundations of petitioners' store building and other damage to petitioners' property.

Petitioners alleged the Highway Commission was negligent in that: (1) it failed to provide proper drainage facilities for the normal runoff of the waters of the creek; and (2) it maintained a culvert (a) that was not large enough and (b) that was constructed in such manner as to create "the whirlpool" to the south of petitioners' property. They alleged further that the Highway Commission's negligence in these respects proximately caused a diversion of the waters of the creek from their natural flow and the damage to petitioners' property.

Petitioners, predicated upon the same facts, alleged further that the damage to their property caused by said diversion of the natural flow of the waters of the creek constituted a taking and appropriation of their property rights for which they are entitled to just compensation, namely, $20,000.00.

The Highway Commission asserted, as grounds of demurrer, that the facts alleged by petitioners (1) "are not sufficient to show an appropriation of the property of the petitioners by the respondent under its powers of eminent domain"; (2) "sound in tort"; and (3) "do not constitute a cause of action over which this Court has jurisdiction as against this respondent."

Petitioners, in their brief, assert: "While the petition in the present case contains allegations amounting to negligence of the defendant,

Highway Commission, it is to be observed that the basic cause of action and the facts underlying that cause of action as alleged in that petition is one for a constitutional taking of the plaintiffs' real property resulting from the diversion of creek waters onto the plaintiffs' property repeatedly and over a long period of time and in spite of the protest of the plaintiffs . . ."

The State Highway Commission is an unincorporated agency of the State. Petitioners cannot maintain an action against it in tort for damages to their property. Ordinarily, it is not subject to suit except in the manner expressly authorized by statute. *McKinney v. Highway Commission,* 192 N.C. 670, 135 S.E. 772; *Schloss v. Highway Commission,* 230 N.C. 489, 53 S.E. 2d 517; *Moore v. Clark,* 235 N.C. 364, 70 S.E. 2d 182; *Cannon v. Wilmington,* 242 N.C. 711, 89 S.E. 2d 595; *Williams v. Highway Commission,* 252 N.C. 772, 114 S.E. 2d 782.

Notwithstanding their allegations as to negligence, petitioners rightly concede they cannot maintain a tort action against the Highway Commission.

While their pleading refers to the Sherrills as "petitioners," there was no request for the appointment of commissioners. There appears in the record an order of the clerk "that this action be placed upon the Civil Docket of the Superior Court of Iredell County for trial by jury." There is no allegation, and apparently no contention, that this is a special proceeding in condemnation under G.S. 136-19 and G.S. 40-12 *et seq.*

This exception to the general rule is well established: Where private property is *taken* for a public purpose by a governmental agency having the power of eminent domain under circumstances such that no procedure provided by statute affords an applicable or adequate remedy, the owner, in the exercise of his constitutional rights, may maintain *an action* to obtain just compensation therefor. *McKinney v. High Point,* 237 N.C. 66, 74 S.E. 2d 440; *Eller v. Board of Education,* 242 N.C. 584, 89 S.E. 2d 144; *Sale v. Highway Commission,* 242 N.C. 612, 89 S.E. 2d 290; *Cannon v. Wilmington, supra; Rhyne v. Mount Holly,* 251 N.C. 521, 112 S.E. 2d 40; *Insurance Co. v. Blythe Brothers Co.,* 260 N.C. 69, 131 S.E. 2d 900; *Midgett v. Highway Commission,* 260 N.C. 241, 132 S.E. 2d 599; *Charlotte v. Spratt,* 263 N.C. 656, 140 S.E. 2d 341.

The question presented is whether the facts alleged constitute a (partial) taking in a constitutional sense of petitioners' property by the Highway Commission. If so, petitioners are entitled to just compensation therefor.

The clear import of petitioners' allegations is that Center Street, including the fill and culvert, was constructed prior to 1950, presumably by the City of Statesville. It is not alleged that the Highway Commis-

sion participated in any way in the original construction thereof. In this respect, the factual situation is distinguishable from *Braswell v. Highway Commission,* 250 N.C. 508, 108 S.E. 2d 912, and *Midgett v. Highway Commission, supra.* Nor is there allegation that the property now owned by petitioners was injuriously affected prior to March 1959 by the alleged inadequacy of the culvert in respect of size or manner of construction.

Petitioners alleged in substance that Center Street became a part of the State highway system prior to 1950 and since then has been a part thereof.

G.S. 136-41.1, as appears in the 1951 Cumulative Supplement to (original) Volume 3 of the General Statutes, contains this provision: "From and after July 1, 1951, all streets within municipalities which now or hereafter may form a part of the State highway system shall be maintained, repaired, improved, widened, constructed and reconstructed by the State Highway and Public Works Commission, to the same extent and in the same manner as is done on roads and highways of like nature outside the corporate limits . . ." While G.S. 136-41.1 was repealed by Chapter 687, Session Laws of 1959, this 1959 Act contains the provisions of like import now codified as G.S. 136-66.1 of Volume 3B of the General Statutes, 1964 Replacement.

Under the cited statutes, when a city street becomes a part of the State highway system, the Highway Commission is responsible for its condition *thereafter* to the same extent as if originally constructed by it; and we hold that this applies to the fill and culvert here concerned as well as to the surface areas of the highway.

In a West Virginia decision, *Riddle v. Baltimore & Ohio R. Co.,* 73 S.E. 2d 793, 34 A.L.R. 2d 1228, plaintiff recovered damages on the ground the defendant maintained an inadequate culvert under its railroad fill, causing the backwaters of the run to flood his residence property. This excerpt from the opinion is noted: "Although defendant's culvert was evidently adequate when originally constructed in 1895, the evidence is, in our opinion, sufficient for the jury to find, as it did, from a preponderance thereof, that defendant's culvert was inadequate to serve the waters of Bunnells Run during the height of the flood of June 24 and 25, 1950, and on the occasions of prior floods." See 93 C.J.S., Waters § 20, p. 628.

Petitioners allege the culvert became inadequate because of the gradual increase in the volume of water draining into the creek west of Center Street. When the petition is construed in the light most favorable to petitioners, it may be inferred that this increase was occasioned by the growth of the City of Statesville and the grading and paving of streets west of Center Street. In this connection, see *Braswell v. High-*

*way Commission, supra,* and *Roberson v. Kinston,* 261 N.C. 135, 134 S.E. 2d 193. It is not alleged that this increase was caused by any conduct of the Highway Commission.

Ordinarily, "(a) 'diversion,' as applied to watercourses, is a taking of water from a stream and not returning it so that the lower riparian owner can use it." 93 C.J.S., Waters § 58, p. 722. Obviously, "diversion," is not used by petitioners in its ordinary sense. Rather, as used by petitioners, it refers to the alleged fact that the culvert does not run with the natural course of the creek.

According to petitioners' allegations: Nothing in the nature of a taking of their property rights occurred until March 1959. Prior thereto, a portion of the north bank of the creek, once approximately ten feet wide, was between petitioners' south property line and the creek. During normal heavy rains and rain storms the culvert, since March 1959, has been insufficient to carry the waters of the swollen creek. The fill obstructs the natural flow thereof. The water passes through the culvert under pressure and at greater velocity and force. The culvert does not follow the natural course of the stream. On account of these facts, of which the Highway Commission has had knowledge or notice since March 1959, the impact of the water against the south bank creates a whirlpool and the swirling water is cast thereby against petitioners' property.

Construing the petition in the light most favorable to petitioners, the facts alleged are sufficient to establish that the continued maintenance of said permanent structure, fill, culvert and highway, constitutes a permanent taking in the constitutional sense as of March 1959 or subsequent thereto of an easement to discharge water in like manner against petitioners' property. *Midgett v. Highway Commission, supra,* and cases cited.

The factual situation depicted by petitioners' allegations is unusual in that the damage allegedly caused by the fill and culvert, which apparently have stood the test of time, is to property *below* the fill and culvert. Be that as it may, we are not presently concerned with whether petitioners can establish the facts alleged. Nor do we anticipate serious questions that may arise upon the trial. We hold only that, nothing else appearing, the facts alleged by petitioners are sufficient to withstand the Highway Commission's demurrer.

Reversed.