## NELLO L. TEER COMPANY v. NORTH CAROLINA STATE HIGHWAY COMMISSION.

### (Filed 23 July, 1965.)

**1. Highways § 9; State § 4—**

The Highway Commission, as an agency of the State, is subject to suit, in contract or in tort, only in accordance with statutory authorization, subject to the exception that where it takes private property for a public purpose under circumstances such that no procedure provided by statute affords an applicable or adequate remedy, the owner, in the exercise of his constitutional rights, may maintain an action to obtain just compensation.

**2. Same—**

Statutes authorizing suit against the State or a State agency are in derogation of the sovereign right of immunity and are to be strictly construed.

**3. Highways § 8.1;  Contracts § 12—**

The statutory requirement for competitive bids for contracts let by the Highway Commission for construction work in excess of the designated amount constitutes a prerequisite to the exercise of the power of the Highway Commission to let such contracts, and persons dealing with the Commission are presumed to know and are bound by the law with respect to the requirement of competitive bidding.

**4. Highways § 9—**

A Board of Review appointed pursuant to G.S. 136-29 to settle controversies between the Highway Commission and a contractor for work done under a construction contract has the status of a quasi-judicial body and

not that of a board of arbitration, and in the exercise of its judicial functions and authority is empowered to determine what amount, if any, the contractor is entitled to recover as a matter of legal right under the contract, and any recovery must be based upon the terms and provisions of the contract.

**5. Same—**

Where it appears that a Board of Review acting under G.S. 136-29 to determine a contractor's claim for additional compensation did not relate its decision to the contract as required by the statute but reviewed the contractor's entire operation and devised a formula to give the contractor, in its judgment, an appropriate return, *held*, the Board acted under a misapprehension of the applicable law, and the Superior Court on appeal should vacate all of the Board's findings of fact and conclusions and decision, and remand the proceedings for further hearing in light of the applicable legal principles.

**6. Same—**

Where a contractor files within the 60 day period a claim for additional compensation, the Highway Commission is not entitled to dismissal because the claim fails to assert the right to recovery under the correct legal theory, since the statute contains no provisions as to pleadings but simply provides for the filing of the claim within the time specified.

**7. Same—**

The fact that a member of the Board of Review, under the impression that it was appropriate for him to make any investigations that might be of assistance in rendering a decision, engaged in conversations and inquiries with representatives of the contractor when the Board of Review was not in session, will not be held to disqualify him from further service as a member of the Board when immediately the matter was called to his attention he limited his consideration to matters offered before the Board.

**8. Same—**

Where it appears that a claim for additional compensation for a highway construction contract was not filed as required by law within the 60 days from payment of the final estimate, the claim is barred.

**9. Appeal and Error § 34—**

Where an appeal is determined on matters appearing on the face of the record, the question whether the appeal is subject to dismissal because the evidence was set forth in question and answer form becomes academic. Rule of Practice in the Supreme Court No. 19(4).

Cross appeals by Teer Company and by Highway Commission from *Martin, S. J.*, October 1964 Session of WAKE.

Nello L. Teer Company (Teer) and the State Highway Commission of North Carolina (Highway Commission) entered into a contract dated July 8, 1958 in which Teer is designated Contractor and the Highway Commission is designated Commission.

The contract, in part, provides:

"Article One. The Contractor shall and will provide and furnish all the materials, machinery, implements, appliances and tools, and perform the work and required labor to construct and complete a certain project known as State Highway Project No. 8.13438 located in Cumberland County, in the State of North Carolina, Surfacing on Relocation of U.S. 301 From a Point Near Eastover, Northeast of Fayetteville, Northeast to Harnett County Line, for the unit prices bid by the Contractor in his proposal and according to the proposal, plans and specifications prepared by said Commission, which proposal, plans and specifications show the details covering this project and . . . become a part of this contract.

"The Contractor shall begin work 20 days after the date the contract is mailed from the Raleigh office for execution . . . and shall complete the contract within 300 working days."

The project, also referred to as "Federal Project I-95-2(10)55," involved paving, specified preparations therefor and incidental items in connection with the construction of 14.55 miles of dual-lane highway. This statement appears on the plans: "The rough grading and structures on this project have been done or is now being done under a previous contract. This contract will include Fine Grading Subgrade, Shoulders and Ditches, Soil Type Base Course, Bituminous Concrete Base Course (Modified), Bituminous Concrete Surface Course and other necessary items to complete the project."

Bids submitted in response to the Highway Commission's publicly advertised invitation for bids were in terms of "Approximate Quantities" and "Unit Prices" in each of thirty-one classifications. With reference to each of six classifications, Teer's bid, in terms of quantity, description, unit price and (extended) total, is shown below.

(1)   153,500 cubic yards borrow excavation (shoulder construction) at 60¢ per cubic yard                        $ 92,100.00

(2)   2,200,000 cubic yards overhaul (special) one-half mile at 3¢ per cubic yard                               $ 66,000.00

(3)   199,100 cubic yards soil type base course at 65¢ per cubic yard                                            $129,415.00

(4)   172,510 square yards bituminous surface treatment at 32¢ per square yard                                   $ 55,203.20

(5)   157,700 tons bituminous concrete base course at $5.50 per ton                                              $867,350.00

(6)   51,800 tons bituminous concrete surface course at $6.20 per ton                                            $321,160.00

These items ($1,531,228.20) comprise approximately 94.3% of Teer's total bid (based on "Unit Prices" for "Approximate Quantities") of $1,623,837.70.

Included in Teer's said bid was a bid of $1.00 per cubic yard (unit price) for two thousand (approximate quantity) cubic yards of "Unclassified Excavation."

When the bids were opened on June 3, 1958, it was determined that Teer had submitted the lowest bid. Its bid was accepted and the formal contract of July 8, 1958 was executed.

The time for commencement of the work was postponed, by mutual consent, until the Highway Commission by letter of July 6, 1959 notified Teer to proceed. The project was completed by Teer in 254 working days and accepted on October 14, 1960.

Prior to Teer's commencement of work on or about July 21, 1959, the Highway Commission notified Teer it was necessary to make two grade changes which involved "approximately 10,800 cubic yards borrow" and "1,425 cubic yards soil type base course," and Teer agreed to do "the work requested at our unit contract prices, although this is part of another contractor's work."

In undertaking to perform its contract, Teer was frequently unable to proceed as planned on account of the prior contractor's failure to perform properly the rough grading, drainage and shoulder work covered by the prior (No. 8.13437) project.

The difficulties encountered by Teer included the presence of approximately 168 soft-yielding areas of varying size in the subgrade and shoulders due to the presence of stumps, roots, matted vegetation, and other unsuitable material. Before Teer could proceed with the work required under its paving contract, it was necessary to remove such unsuitable material (undercutting) and to replace it with suitable (borrow) material.

Teer, as directed by the Highway Commission's engineers, proceeded to do the required remedial work. The estimates paid by the Highway Commission to Teer during the period of performance included payment for undercutting at the rate prescribed in the contract for "Unclassified Excavation" ($1.00 per cubic yard) and for replacement at the rate prescribed in the contract for "Borrow Excavation" (60¢ per cubic yard) and for "Overhaul" (3¢ per cubic yard). Teer's evidence tends to show: While it was agreed said rates should apply to small quantities involved during the earliest stages of performance, as soon as the magnitude of this required remedial work became known, Teer contended these rates under existing circumstances were grossly inadequate; and that, under the pressure of circumstances, it was agreed

that final determination and adjustment for this required remedial work would be made upon completion of Teer's contract.

In November 1959 the Highway Commission's Resident Engineer instructed Teer to bring the project up to "Interstate 95 Standard." These instructions referred specifically to required remedial work on pipe lines and catch basins over the entire project and also to the removal of stumps, root mat, etc., from all subgrade not theretofore paved. Teer was instructed to do "the above work" under the direction of the Highway Commission's Resident Engineer "on Force Account in accordance with State Specifications."

Other required remedial work included a "benching" operation involving the extension of the width of the shoulders. A disagreement as to whether Teer should be compensated for this work at $2.854 per cubic yard as it contended or at 97½¢ per cubic yard as the Highway Commission contended had not been resolved at the time the project was completed and accepted.

Teer started work on or about July 21, 1959. It received payments, in accordance with twenty-five estimates, aggregating $2,001,525.81. Payment of $19,916.86, the amount of the final estimate, was made September 13, 1961.

It appears that Teer, prior to November 4, 1961, submitted to the Highway Commission an additional claim "in the approximate sum of $400,000.00," and that, after conference between Teer's representatives and the Highway Commission's representatives, Teer was asked "to submit a more detailed claim in writing."

Teer initiated this proceeding by filing its letter of November 4, 1961, referred to therein as "our formal claim," for additional payment for its work on said project. Its claim was denied by the Highway Commission's Chief Engineer on May 28, 1962. Upon its appeal to the Highway Commission, the Highway Commission's Chairman requested that Teer's claim "be heard before a Board of Review as provided by statute." Thereafter, a Board of Review was constituted as provided by the statute *then* in force and codified as G.S. 136-29, G.S. Vol. 3B, 1958 Replacement. (Note: This statute was repealed in 1963 (S.L. 1963, c. 667). G.S. 136-29 in G.S. Vol. 3B, 1964 Replacement, is a codification of the 1963 Act.) The Board of Review was composed of (1) Mr. Kenneth Wooten, Jr., selected by the Chairman of the Highway Commission; (2) Mr. Thomas D. Dopler, selected by Teer; and (3) Mr. John D. Watson, who was selected by Messrs. Wooten and Dopler and was elected Chairman.

The basis of Teer's "formal claim" of November 4, 1961, as stated therein, is as follows:

"We began construction on July 21, 1959, and immediately encountered stumps, root mat, and other debris in the subgrade. Immediately after beginning hauling operations, failures in the subgrade developed, making it entirely impossible to continue our operations. We immediately advised your representatives and after a careful study of the existing conditions, it was agreed that the previous contract had been constructed in utter disregard of the plans, specifications and special provisions. The existence of these conditions prompted your office to issue instructions for our firm to perform certain remedial work in an effort to bring the previous contractor's work within acceptable tolerances and standards and allow us to continue the items of work included in our contract even though it was apparent to all concerned that the entire concept of our original contract had been changed, revised and breached, thereby eliminating all possibilities of performing the work originally contemplated under our contract within the economic tolerances of our contract bid unit prices."

The following is *a summary* of the items for which additional payment was requested:

| "Force Account | $ 40,192.70 |
|---|---|
| Clearing and Grubbing | 4,951.05 |
| Unclassified Excavation: | |
| Stripping Pits | 45,556.00 |
| Roadway Excavation | 49,357.35 |
| Borrow and Overhaul | 263,593.42 |
| Soil Type Base Course | 343,646.10 |
| Fine Grading Side Roads & Ditches | 44,405.99 |
| Delays | 8,330.86 |
| Hauling Rejected Aggregate | 3,456.09 |
| TOTAL | $803,489.96." |

Hearings were held by the Board of Review on each of thirty days during the period beginning March 27, 1963 and ending July 1, 1963. Evidence was offered by Teer and by the Highway Commission. Upon the opening of the hearing on March 27, 1963, the Highway Commission, on grounds considered in the opinion, moved to dismiss Teer's claim and excepted to the Board's denial of its motion. At the conclusion of Teer's evidence and also at the conclusion of all the evidence, the Highway Commission moved for judgment of nonsuit and excepted to the denial of its motions.

During the hearing, to wit, on April 24, 1963, before the Board of Review, Teer moved to amend the figure opposite "Delays" by in-

creasing it from $8,330.86 to $291,524.31, thereby increasing its total claim from $803,489.96 to $1,086,683.41. Thereafter, by voluntary reductions in other items, including the withdrawal of the item "Hauling Rejected Aggregate $3,456.09," Teer's asserted "over-all claim" was then for a total of $1,075,618.12.

A decision and award, based on extensive findings of fact, including comments as to considerations that impelled such findings, was filed March 20, 1964 by the Board of Review based on the vote of a majority of its members, to wit, Messrs. Watson and Dopler. Mr. Wooten filed a dissenting opinion.

In rendering what it considered "a fair and equitable decision and award in favor of the Teer Company and against the Commission," the Board of Review made two separate awards, to wit, (1) a "General Award to the Teer Company" in the amount of $385,270.77 with interest at 6% per annum from the date of award and for the costs Teer had sustained "by reason of the arbitration proceedings," and (2) a "Special Award to Teer Company," to wit, an award to Teer for the benefit of Brown Paving Company in the amount of $99,312.50 with interest at 6% per annum from the date of award.

Teer's claim in behalf of Brown Paving Company was first asserted during the progress of the hearings before the Board of Review, and it appears to be what Teer had in mind when, on April 24, 1963, Teer moved to amend the figure in its "formal claim" of November 4, 1961 opposite "Delays" by increasing it from $8,330.86 to $291,524.31.

With reference to the basis of its "General Award to the Teer Company," the decision of the Board of Review contains the following statement:

"In considering the award the Board finds that, from an examination of the evidence, the Teer Company in allocating its claim to the several classifications of work, fails to set forth with a degree of certainty that the nature of the expense claimed is properly chargeable in every instance to the phase of work to which it is assigned, and that the allocation is in some respects lacking in specific detail. The Board concludes that the Teer Company's division of its claim does not indicate that the entire award based upon such allocation would be fair and equitable to either the Teer Company or the Commission. The Board further concludes that a determination of the appeal by such allocation as the Teer Company has presented is not wholly required inasmuch as other evidence proves that all features of work subject to the claim were adversely affected by the failure of the Commission, and the total loss can be established with certainty in order to provide fair and equitable relief to the injured party.

"The Board reaches a decision that the formula for determining a fair and equitable award to the Teer Company shall be based upon establishing and allowing the appropriate financial return to which it was entitled to receive, as follows:

1. An allowance of the expense of performing the work.

2. An allowance of a reasonable cost for general overhead which the Board finds to be five (5%) percent of expenses.

3. An allowance of a fair profit, which the Board finds to be ten (10%) percent of expense plus overhead.

4. A reduction of the sum of the above item by the amount already paid by the Commission to the Teer Company.

5. An allowance of interest at the rate of six (6%) percent per annum upon the amount of this award from the date of this decision until the award is paid.

6. An allowance of all costs sustained in connection with the arbitration proceedings before this Board."

Teer appealed to the superior court, basing its appeal on two exceptions in which it asserted the Board of Review erred (1) in failing to make sufficient allowance for rented equipment in computing Teer's costs, and (2) in failing to allow interest from October 14, 1960, the date Teer had completed the project.

The Highway Commission appealed to the superior court, basing its appeal on 177 exceptions to the "FINDINGS OF FACTS, CONCLUSIONS OF LAW, DECISION AND AWARD OF THE BOARD OF REVIEW." Upon hearing in the superior court Judge Martin, in connection with the Highway Commission's appeal, sustained, in whole or in part, 27 of the Highway Commission's exceptions and overruled the remainder thereof; and, with reference to Teer's appeal, Judge Martin overruled Teer's two exceptions.

Judge Martin struck items aggregating $125,700.67 from said "General Award to the Teer Company" made by the Board of Review and entered judgment that Teer recover of the Highway Commission the sum of $259,570.10 without interest from date of judgment or otherwise.

Judge Martin's judgment also provided "that the Nello L. Teer Company have and recover nothing of the State Highway Commission for the benefit of the Brown Paving Company on the matters arising in this proceeding."

Other provisions of Judge Martin's judgment are not pertinent to decision on this appeal.

Both Teer and the Highway Commission appealed. The Highway Commission's 23 assignments of error are based on exceptions to Judge Martin's rulings. Teer's 39 assignments of error are based on exceptions to Judge Martin's rulings.

By order of Judge Martin, separate statements of case on appeal, one filed by Teer and the other by the Highway Commission, are included in the record on appeal.

*Nye, Winders & Mitchell for plaintiff.*
*Attorney General Bruton; Assistant Attorney General Harrison Lewis; William W. Melvin, Trial Attorney; and Manning, Fulton & Skinner, Associate Counsel for defendant.*

BOBBITT, J.　Decision on this appeal requires construction of the statute under which Teer initiated this proceeding. This statute, while no longer a part of our statutory law, is applicable to the present litigation. It must be considered and construed in the context of well established legal principles stated below.

Absent waiver, the State is immune from suit. *Smith v. Hefner,* 235 N.C. 1, 6, 68 S.E. 2d 783; *Ferrell v. Highway Commission,* 252 N.C. 830, 833, 115 S.E. 2d 34. It is noted that the provisions of Section 9, Article IV, of the Constitution of North Carolina of 1868, relating to claims against the State, by virtue of the comprehensive amendment of Article IV in 1961 are now a part of Section 10, Subsection 1, of Article IV of the Constitution of North Carolina.

The Highway Commission is an unincorporated agency of the State. Except as provided in the Tort Claims Act, G.S. 143-291 *et seq.,* the Highway Commission is not subject to suit in tort. *Schloss v. Highway Com.,* 230 N.C. 489, 492, 53 S.E. 2d 517; *Floyd v. Highway Commission,* 241 N.C. 461, 85 S.E. 2d 703. Nor is the Highway Commission, unless otherwise provided by statute, subject to suit on contract or for breach thereof. *Dalton v. Highway Com.,* 223 N.C. 406, 27 S.E. 2d 1. Moreover, under our decisions, acts permitting suit, being "in derogation of the sovereign right of immunity," are to be "strictly construed." *Floyd v. Highway Commission, supra.*

The basic rule is that the Highway Commission is not subject to suit except in the manner expressly provided by statute. *Sherrill v. Highway Commission,* 264 N.C. 643, 646, 142 S.E. 2d 653, and cases cited; *Ferrell v. Highway Commission, supra,* and cases cited. An exception to this basic rule is well established, to wit: Where private property is *taken* for a public purpose by a governmental agency having the power of eminent domain under circumstances such that no procedure provided by statute affords an applicable or adequate remedy, the owner,

in the exercise of his constitutional rights, may maintain *an action* to obtain just compensation therefor. *Sherrill v. Highway Commission, supra,* and cases cited; *Ferrell v. Highway Commission, supra,* and cases cited.

G.S. 136-28, at all times pertinent to decision herein, contained the following provision: "All contracts over one thousand dollars that the Commission may let for construction, or any other kinds of work necessary to carry out the provisions of this chapter, shall be let, after public advertising, under rules and regulations to be made and published by the State Highway Commission, to a responsible bidder, the right to reject any and all bids being reserved to the Commission; except that contracts for engineering or other kinds of professional or specialized services may be let after the taking and consideration of bids or proposals from not less than three responsible bidders without public advertisement." G.S. Vol. 3B, 1958 Replacement. It is noted that G.S. 136-28 was amended in 1963 (S.L. 1963, c. 525) by substituting "five thousand dollars ($5,000.00)" for "one thousand dollars." G.S. Vol. 3B, 1964 Replacement.

By the weight of authority, a statutory requirement for competitive bids constitutes "a jurisdictional prerequisite to the exercise of the power of a public corporation to enter into a contract." *Fonder v. City of South Sioux Falls,* 71 N.W. 2d 618, 53 A.L.R. 2d 493 (S.D.), and cases cited.

This statement, supported by cited cases, appears in 135 A.L.R. 1266: "In general, but subject to certain limitations and exceptions which are considered in subsequent subdivisions of this annotation, statutes requiring the letting of public contracts to the lowest bidder are regarded as rendering invalid and unenforceable subsequent agreements to pay one to whom a public contract has been duly awarded additional compensation for extras or additional labor and materials not included in the original contract, at least where the additional compensation exceeds the amount for which public contracts may be made without competitive bidding."

"Persons dealing with the public agency are presumed to know the law with respect to the requirement of competitive bidding and act at their peril." *Miller v. McKinnon,* 124 P. 2d 34 (Cal.), and cases cited; 49 Am. Jur., States, Territories, and Dependencies § 86; 81 C.J.S., States § 113, pp. 1087-1088. This includes knowledge that the officials and agents of the public agency may not waive the sovereign right of immunity or act in violation of statutory requirements. 19 Am. Jur., Estoppel § 166.

This Court has held a purported public contract not made in conformity with the (similar) requirements of G.S. 143-129 is void, but

that performance and acceptance of construction work imposes an obligation to pay the reasonable and just value of the work done and materials furnished. Even so, such recovery excludes profits and such reasonable and just value cannot exceed actual cost. *Hawkins v. Dallas*, 229 N.C. 561, 50 S.E. 2d 561, and cases cited. Compare *Insulation Co. v. Davidson County*, 243 N.C. 252, 90 S.E. 2d 496, and see 35 N.C.L.R. 188, 239.

After compliance with requirements of G.S. 136-28, the contract of July 8, 1958, for Project No. 8.13438, was awarded to Teer. Teer's work was interrupted and delayed on account of another contractor's failure to perform properly the contract (Project No. 8.13437) covering rough grading, drainage and shoulder work. Teer performed extensive extra work to remedy these deficiencies, such work being prerequisite to the performance of Teer's contract. The fact now emphasized is that Teer, well within the prescribed number of working days, completed on October 14, 1960, the work called for in its written contract of July 8, 1958.

Whether such deficiencies were of such character and magnitude as to constitute sufficient ground for rescission by Teer of its contract with the Highway Commission need not be determined. Suffice to say, Teer made no attempt to rescind but performed the extra (remedial) work as directed by the Highway Commission's engineers in addition to that required to perform its contract of July 8, 1958.

Pertinent provisions of the Standard Specifications for Roads and Structures, published October 1, 1952 by the Highway Commission, include the following:

"4.4  EXTRA WORK.  The contractor shall perform unforeseen work, for which there is no price included in the contract whenever it is deemed necessary or desirable in order to complete fully the work as contemplated, and such extra work shall be performed in accordance with the specifications and as directed; provided, however, that before any extra work is started a supplemental agreement shall be entered into, or a written extra work order issued by the Engineer to do the work.

"If it is possible to agree upon equitable prices, the contractor and Commission shall enter into a supplemental agreement to cover any and all the extra work necessary.

"When such prices cannot be agreed upon, then the work will be paid for on Force Account basis as described in Section 9.4. The contractor shall perform extra work whenever it is deemed necessary or desirable, and such work shall be done in accordance with the requirements of these specifications as directed by the Engineer."

Section 9.4 relates to the authorization of extra and force account work, provides in detail for the keeping of records in connection therewith and provides specifically for the compensation to be paid therefor. Generally, in respect of work done by force account, Section 9.4 provides for the payment of all specified costs plus 10% of the actual costs of labor and materials.

As indicated in our preliminary statement, with reference to the extensive undercutting and replacement in the subgrade of the roadway and of the shoulders, the Highway Commission contends it was agreed that this remedial work was to be done by Teer at the rates shown in the estimates while Teer contends payment on this basis was made and received subject to the definite agreement that final determination and adjustment for this required remedial work would be made upon completion of Teer's contract. In this connection, it is noted that this extensive remedial work, according to Teer's contention and as evidenced by payments to Teer based on estimates, greatly exceeded the $1,000.00 established by G.S. 136-28 as the amount determinative of the necessity for public advertisement for bids and competitive bidding.

The statute under which Teer initiated this proceeding (G.S. 136-29, G.S. Vol. 3B, 1958 Replacement) is quoted in full below.

"§ 136-29. Settlement of controversies between Commission and awardees of contracts. — Upon the completion of any contract awarded by the State Highway Commission to any contractor, *if the contractor fails to receive such settlement as he claims to be entitled to under his contract, he may, within sixty days from the time of receiving his final estimate, file with the State Highway Engineer a claim for such amount as he deems himself entitled to under the said contract;* and the State Highway Engineer shall, within thirty days from the receipt of the said claim, pass upon the same and notify the contractor in writing of his decision. If the contractor desires to do so, he may, within thirty days from the receipt of the said decision of the State Highway Engineer, appeal in writing to the State Highway Commission. Upon receipt of said appeal the chairman of the State Highway Commission shall promptly appoint some competent person, and the claimant shall likewise select a competent person, and these two shall elect a third such person, the three of whom shall constitute a board of review, and shall promptly set a time and place for the hearing. The committee or the claimant shall have power and authority to summon persons and papers and the committee shall make a complete investigation of all matters relating to the said appeal and the contract and the work out of which it grows, and determine all matters at issue in a fair and equitable manner according to their best judgment. The decision of

the said committee shall be final and any amount which they may award the said contractor will be a valid claim against the State Highway Commission; provided, however, an appeal may be had from the decision of the said committee to the Superior Court of Wake County under the same terms, conditions and procedure as appeals from the Industrial Commission, as provided in § 97-86. The provisions of this section shall be deemed to enter into and form a part of every contract entered into between the State Highway Commission and any contractor, and no provision in said contracts shall be valid that are in conflict herewith." (Our italics.)

A primary question for determination is whether the committee (board of review) authorized by the statute, referred to hereafter as the Board of Review, has the status of a board of arbitration or that of a judicial or *quasi*-judicial body.

It is noted that the statutory procedure is available when the contractor has completed his contract with the Highway Commission and fails to receive "such settlement as he claims to be entitled to *under his contract.*" (Our italics.) The statute assumes a valid contract is subsisting. The procedure is to resolve any controversy as to what (additional) amount, if any, the contractor is entitled to recover under its terms.

The manner of selection of the persons to serve on the Board of Review is in accord with a traditional method for the selection of arbitrators. Each interested party is authorized to select a member. No qualifications or limitations with reference to the persons so selected are prescribed. Presumably, it was contemplated that each party would select a person it anticipated would be favorably inclined to it and its position; and that the third person, selected by joint vote of the two original appointees, would occupy a key role in deciding the controversy. Too, the statute provides that "the committee shall make a complete investigation of all matters relating to the said appeal and the contract and the work out of which it grows, and determine all matters at issue in a fair and equitable manner according to their best judgment."

Based largely on the provisions referred to in the preceding paragraph, Teer contends the status of the Board of Review is that of an arbitration board. Its brief states its position as follows: "As is true with arbitration boards, the hearings before the Board of Review are extra-judicial proceedings and the Board members are not bound by the rules of procedure and evidence which prevail in a court of law; COTTON MILLS v. TEXTILE WORKERS UNION, 238 N.C. 719, 79 S.E. 2d 181. The Board members are not required to determine the controversy according to law, POE & SONS, INC. v. UNIVERSITY, 248 N.C. 617, 104

S.E. 2d 189, but rather may decide according to their own opinions of equity and conscience, and are not restricted to precedents and positive rules of either law or equity. LUSK v. CLAYTON, 70 N.C. 184; ROBBINS v. KILLEBREW, *et al.*, 95 N.C. 19."

Notwithstanding provisions which, standing alone, are consistent with arbitration, the true status and function of the Board of Review, in our opinion, is clarified by the following provision: "The decision of the said committee shall be final and any amount which they may award the said contractor will be a valid claim against the State Highway Commission; provided, however, an appeal may be had from the decision of the said committee to the Superior Court of Wake County *under the same terms, conditions and procedure as appeals from the Industrial Commission, as provided in § 97-86.*" (Our italics.)

The Industrial Commission, with reference to contested claims for compensation, "is constituted a special or limited tribunal, and is invested with certain judicial functions, and possesses the powers and incidents of a court, within the provisions of the act, and necessary to determine the rights and liabilities of employees and employers." *Hanks v. Utilities Co.,* 210 N.C. 312, 319, 186 S.E. 252. The Industrial Commission is required to hear the parties (evidence), determine the dispute in a summary manner and file its award, "together with a statement of the findings of fact, rulings of law, and other matters pertinent to the questions at issue." G.S. 97-84, G.S. 97-85.

Specific findings of fact by the Industrial Commission, covering the crucial questions of fact upon which the plaintiff's right to compensation depends, are required. *Guest v. Iron & Metal Co.,* 241 N.C. 448, 451, 85 S.E. 2d 596, and cases cited. Its findings of fact, except jurisdictional findings *(Askew v. Tire Co.,* 264 N.C. 168, 141 S.E. 2d 280), are conclusive on appeal if supported by competent evidence. G.S. 97-86; *Penland v. Coal Co.,* 246 N.C. 26, 97 S.E. 2d 432, and cases cited. However, when it appears that the Industrial Commission has found the facts under a misapprehension of the applicable law, the cause will be remanded for findings of fact by the Industrial Commission upon consideration of the evidence in its true legal light. *McGill v. Lumberton,* 215 N.C. 752, 3 S.E. 2d 324, and cases cited therein, and numerous subsequent decisions. (See Shepard's North Carolina Citations, 215 N.C. 752, headnote 3.) The Industrial Commission is vested with the judicial function and the authority and duty to determine whether, under the established facts and applicable law, the plaintiff has a compensable claim.

In our view, an appeal from the Board of Review to the Superior Court of Wake County "under the same terms, conditions and procedure as appeals from the Industrial Commission, as provided in § 97-

86" presupposes that the Board of Review has performed judicial functions comparable to those vested in the Industrial Commission. Hence, we are of opinion, and so hold, that the statute contemplates that the Board of Review, in the exercise of judicial functions and authority, shall, based on findings of fact, determine what (additional) amount, if any, the contractor is entitled to recover *as a matter of legal right* "under the said contract." When considered in context, the provision that the Board of Review shall "determine all matters at issue in a fair and equitable manner according to their best judgment" is not inconsistent with the exercise of said judicial functions and authority. We cannot accept the view that the General Assembly intended a contractor's claim against the Highway Commission should be determined otherwise than in accordance with their respective legal rights.

The only prior case in which the quoted statute was considered by this Court is *Paving Co. v. Highway Commission,* 258 N.C. 691, 129 S.E. 2d 245. There a contractor initiated a proceeding under said statute to recover from the Highway Commission an (additional) amount allegedly due under a paving contract. Specifically, the controversy was whether the Highway Commission had wrongfully withheld $2,900.00 as liquidated damages on account of the contractor's failure to complete the project within the prescribed number of working days. While the precise question was not raised, the decision and opinion clearly reflect the view, in full accord with that stated herein, that the controversy was determinable in accordance with the respective legal rights of the parties and not otherwise.

The quoted statute, which assumes a valid contract is subsisting, provides for recovery "under the said contract." In our view, recovery, if any, "under the said contract" must be based on the terms and provisions thereof.

The Board of Review, in accordance with Teer's contention, did not relate its decision to Teer's right, if any, to recover "under the said contract." It made no distinction between the work covered originally by the contract and the extra (remedial) work performed by Teer. It devised a formula covering Teer's entire operations (without regard to contract provisions) which, in its judgment, would give Teer an "appropriate financial return." In short, it did not exercise the judicial functions and authority vested in it by the statute. Clearly, it did not consider it was required to do so but that its function was comparable to that ordinarily performed by a board of arbitration.

It appearing upon the face of the record that the Board of Review acted under misapprehension of the applicable law, Judge Martin, based on the Highway Commission's exceptions, should have vacated

all findings of fact, conclusions and the decision and remanded the proceeding to the Board of Review for further hearing and consideration in a manner consistent with applicable legal principles as stated herein.

As noted in our preliminary statement, when the Board of Review convened March 27, 1963, the Highway Commission moved to dismiss Teer's claim. Its motion(s) was based on the contention that the statute (former G.S. 136-29) waived immunity only in respect of a claim to recover under a valid contract, and that the claim on which this proceeding is based (submitted by Teer on November 4, 1961) is not such a claim. The Board of Review overruled the Highway Commission's said motion(s) and Judge Martin overruled the Highway Commission's exceptions to said rulings.

If technical rules as to pleadings were applicable, there would be much force in the Highway Commission's said contention. However, Teer submitted its claim for additional compensation in apt time ("within sixty days from the time of receiving his final estimate"); and the Chairman of the Highway Commission, referring to the claim so filed, referred specifically to the procedure authorized by (former) G.S. 136-29 as the appropriate procedure for determination of Teer's claim. The statute contained no provision as to pleadings. It provided simply for the filing of a claim.

Under the circumstances, we are of opinion, and so hold, that Teer, in further hearings before the Board of Review, should be permitted to offer evidence tending to establish the amount, if any, to which it is entitled for work done and materials furnished in categories set forth in its claim of November 4, 1961. Even so, recovery, if any, must be within the terms and framework of the provisions of the contract of July 8, 1958 and not otherwise. Questions analogous to nonsuit will be for consideration (initially by the Board of Review) after Teer has had opportunity to offer such evidence.

It is noted that the decision of the Board of Review, as appears from the excerpt quoted in our preliminary statement, is not related to or in accord with the claim submitted by Teer on November 4, 1961.

It is noted further: The Highway Commission challenges the decision of the Board of Review on the ground that Mr. Dopler, the appointee of Teer, had certain conversations with and made certain inquiries of representatives of Teer when the Board of Review was not in session. We have reviewed the record fully bearing upon this matter. Originally, it appears, Mr. Dopler was under the impression it was appropriate for members of the Board to make any investigation or inquiry that might be of assistance in rendering a decision they deemed fair and equitable. After the matter was called to his attention, he

limited his consideration to evidence offered before the Board of Review. In short, the evidence in the record before us is not deemed sufficient to disqualify Mr. Dopler from further service as a member of the Board of Review.

The foregoing applies to matters involved in what the Board of Review referred to as "General Award to the Teer Company," that is, questions raised by the Highway Commission's appeal.

With reference to Teer's appeal, we confine consideration to Teer's exception to the portion of Judge Martin's judgment which provided "that the Nello L. Teer Company have and recover nothing of the State Highway Commission for the benefit of the Brown Paving Company on the matters arising in this proceeding."

The record discloses that Teer attached to its letter of July 27, 1959 to Brown Paving Company a purchase order for "157,700 Tons Bituminous Concrete Base Course (Modified)" and for "51,800 Tons Bituminous Concrete Surface Course"; and, when accepted by Brown Paving Company, unit prices of "$5.12 per ton" and "$5.87 per ton," respectively, were stipulated. It was also provided: "All asphaltic concrete stone requirements will be purchased from Nello L. Teer Company at the following rates: . . ." It is noted that this order, which refers specifically to "Project 8.13438; I-95-2(10)55," covers the two biggest items of Teer's contract of July 8, 1958 with the Highway Commission. The evidence is unclear as to Teer's settlement with Brown Paving Company. Nothing indicates Brown Paving Company on November 4, 1961 or thereafter had asserted a claim against Teer in connection with work on the subject project. For reasons stated below, further discussion of references in the record to Brown Paving Company is unnecessary.

The final estimate ($19,916.86) was paid by the Highway Commission to Teer on September 13, 1961. The statute fixes "sixty days from the time of receiving his final estimate" as the time within which the contractor may file a claim for additional compensation under the contract. Assuming, without deciding, Teer's right under said statute to assert a claim "for the benefit of the Brown Paving Company," we are of opinion, and so hold, that the statute required that such claim be asserted (filed) within sixty days from September 13, 1961. Consequently, apart from the merits, if any, of Brown Paving Company's claim, and apart from the question as to Teer's right, if any, to assert (file) such claim, any claim Brown Paving Company may have had is barred for failure to assert (file) it within the time prescribed by statute. While the judgment of Judge Martin is vacated, as stated below, his ruling that Teer was not entitled to recover "for the benefit of the Brown Paving Company" was correct.

In this Court, Teer moved to dismiss the Highway Commission's statement of case on appeal for failure to comply with Rule 19(4), Rules of Practice in the Supreme Court, 254 N.C. 783, 800. The Highway Commission set out the major portion of the evidence offered by Teer under direct examination in question and answer form. It asserts this was necessary to show its objections to this evidence as the basis for its contention there was no *competent* evidence to support designated findings of fact, citing *Maley v. Furniture Co.,* 214 N.C. 589, 200 S.E. 438. Since decision on this appeal is based on matters appearing on the face of the record, determination as to whether the Highway Commission's said statement of case on appeal violates Rule 19(4) is academic. However, its status has been considered in taxing the costs incident to this appeal.

The costs on this appeal are taxed as follows: Each party shall pay the entire costs of its briefs. Each party shall pay the entire costs of printing its statement of case on appeal. All other costs incident to the appeal shall be taxed one-half against Teer and one-half against the Highway Commission.

For the reasons stated, the judgment of Judge Martin is vacated and the cause is remanded to the superior court for the entry of a judgment (1) vacating the decision of the Board of Review, including all findings and conclusions stated therein, and (2) remanding the proceeding to the Board of Review for further proceedings not inconsistent with this opinion.

Error and remanded.