***********
The Full Commission has reviewed the prior Decision and Order based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Decision and Order. Accordingly, the Full Commission affirms the Decision and Order of Deputy Commissioner Gheen.
 ***********
The following documents were introduced into evidence as:
 EXHIBITS
1. Plaintiff's Exhibit 1-A: University of North Carolina Hospital Discharge Summary dated April 29, 1998.
2. Plaintiff's Exhibits 1B-1D: Photographs of injuries sustained by plaintiff, Edward L. Thompson (hereinafter "Thompson").
3. Plaintiff's Exhibit 2: Thompson's hand drawn diagram of the kitchen facility at Piedmont Correctional Institution (hereinafter "PCI").
4. Defendant's Exhibit 1A: Diagram of the kitchen facility at PCI.
 ***********
The competent evidence of record engenders the following:
 FINDINGS OF FACT
1. The North Carolina Department of Correction (hereinafter "NCDOC") incarcerated Thompson at PCI in Salisbury, North Carolina on April 21, 1998.
2. Thompson worked in the PCI kitchen as a "vegetable cook."
3. Willie Gravley (hereinafter "Gravley"), also an inmate at PCI, was assigned to the PCI kitchen as a "pot washer" from January 6, 1998 to January 26, 1998. Gravley was assigned as a "janitor" in PCI's kitchen from January 27, 1998 through the date of the occurrences on April 21, 1998.
4. The PCI kitchen is some 12,672 square feet. The kitchen is organized by work areas; for example: baking, pots, cooking and dishes. The areas are generally separated by solid walls of varying height.
5. The PCI kitchen serves thousands of meals each day and is normally a center of substantial activity. Inmates are "employed" in the kitchen to perform most duties. On April 21, 1998 only Thompson, Gravley and Correctional Officer Brian Laws (hereinafter "Officer Laws") were in the kitchen area at the time of the incidents giving rise to this civil action. Several stewards were in offices off the main kitchen area.
6. The record is devoid of evidence that Thompson or Gravley held any animosity toward each other prior to April 21, 1998, except for one non-violent prior argument over a football game. Both inmates worked in the kitchen together without incident for some four to five months.
7. Officer Laws was assigned to guard the kitchen on April 21, 1998.
8. NCDOC's rules governing the operation of PCI's kitchen require inmates to remain in their assigned area. There are exceptions; for example, from time to time cooks may leave their area to secure a mop and bucket from the janitor's closet. Inmates who violate the rule are terminated from working in the kitchen. Several days prior to the incidents leading to this civil action, Officer Laws initiated disciplinary action leading to the termination of two inmates working in the kitchen discovered outside their assigned areas.
9. On April 21, 1998, Officer Laws was stationed at a desk separated from the kitchen by a wall approximately four to five feet high and five feet long. While seated at the desk, Officer Laws could look over the wall to a limited area of the kitchen, the degree of vision based on the angle from his desk. Officer Laws' view into the kitchen area would generally permit a partial but not full view of individuals in the kitchen area.
10. Immediately prior to performing their respective duties, Thompson and Gravley were outside the kitchen in a yard area. Thompson witnessed a conversation between Gravley and another inmate in which Gravley was being threatened because he owed the inmate money.
11. Gravley started washing dishes and Thompson was cooking food in a large pot cooker, three to four feet high and three feet in circumference. The pot cooker had a lid of some three feet in circumference. When the lid was raised it would extend six to seven feet above the floor. The pot cooker was behind a wall and some ten to twelve feet in front of Officer Laws. Officer Laws was seated with his feet stationed on the desk in front of him with his hands behind his head.
12. Gravley walked toward a coffee making station on the opposite side of the room, requiring him to walk between Officer Laws and Thompson. Gravley turned and walked back toward the dish washing area and secured a five-gallon bucket, again transversed the walkway immediately between Officer Laws' desk and Thompson, arriving at the coffee making station. Gravley filled his bucket with a large amount of water heated to some 190 degrees. From the coffee making station Gravley walked to the rear of the building and proceeded in a direction as if to return to the dish washing area from the rear, requiring him to pass through the cook area. Part of the rear walkway is separated from the kitchen by a wall some six feet in height.
13. Instead of passing through the cook area and returning to the dishwashing area, Gravley entered the cook area and approached Thompson from the rear. Gravley poured the hot water on Thompson's back.
14. Officer Laws was looking generally in Thompson's direction during the time that Gravley approached from the rear and poured the hot water onto Thompson.
15. Thompson was severely burned on his upper back and shoulders, to a lesser extent on his left ear and on his left chest. Thompson required extensive medical treatment at the UNC Burn Center including plastic surgery. Thompson has serious and permanent scarring and disfigurement.
16. Thompson contends that Officer Laws was negligent because the latter failed to enforce the kitchen operating rules prohibiting inmates from leaving their assigned areas. Specifically, Thompson contends that Officer Laws should have prevented Gravley, a dishwasher, from going to the coffee making station and securing a large amount of hot water.
17. Thompson's contention is not well taken. Gravely was serving as a "janitor" on the day of the incident. Janitors' cleaning duties include cleaning dishes, floors and trashcans. Janitors use hot water from the coffee making station to remove grease from floors and in the dishwashing area to soak stained dinner trays. It was not unusual for a janitor to secure hot water. All inmates in the kitchen used the coffee making station for personal needs. As a janitor, Gravley was permitted full access to the dishwashing area, all common areas of the kitchen, including the coffee making station, and any area where there are trashcans, including the cook area.
18. There is no evidence that Officer Laws saw or could have seen Gravley enter the cook area and approach Thompson from the rear given his view would have been obstructed to a significant degree by the five foot wall in his line of sight. Thompson's testimony circumstantially supports the conclusion that Officer Laws did not see the impending attack as the Officer never changed his position, expression or exhibited any movement evidencing that he was aware of an attack on Thompson.
19. Assuming that Officer Laws could have seen Gravley enter the cook area, that fact alone would not raise reasonable suspicion of a pending attack as Gravley, a janitor, was permitted in the cook area.
20. The greater weight of the evidence establishes that from his position, Officer Laws, at best, would have seen Gravley behind the five foot wall next to the pot cooker immediately prior to raising the bucket of hot water to pour it on Thompson. Gravley was approximately five feet eight inches in height, only eight inches taller than the wall.
21. Officer Laws acted entirely appropriately once the attack occurred.
22. While there was evidence that Thompson was "employed" in the kitchen, no evidence was introduced that Thompson was paid monetary compensation for his services.
 ***********
The forgoing Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. The defendant is liable in tort as provided in the Tort Claims Act. N.C. Gen. Stat. § 143-291, et seq.; Nello L. TeerCompany v. State Highway Commission, 265 N.C. 1, 143 S.E.2d 247
(1965). Plaintiff has the burden to prove all elements of negligence of an employee of defendant. N.C. Gen. Stat. §§ 143-291 -297. Without proof of negligence by the defendant's employee, plaintiff may not recover. Woolard v. DOT, 93 N.C. App. 214,377 S.E.2d 267, cert. denied, 298 N.C. 567, 261 S.E.2d 123 (1979).
2. "[T]he general rule [is] that `a prison official is liable when he knows of, or in the exercise of reasonable care, should anticipate danger to the prisoner, and with such knowledge or anticipation fails to take the proper precautions to safeguard his prisoners.'" Taylor v. North Carolina Department ofCorrection, 88 N.C. App. 446, 451, 363 S.E.2d 868, 871 (1988) (quoting Williams v. Adams, 288 N.C. 501, 504, 219 S.E.2d 198,200) (1975) (hereinafter "Taylor"). It is equally established law that the NCDOC is "not an insurer of the safety of every inmate and will not be found liable for negligence every time one inmate assaults another. . . ." Taylor, 88 N.C. App. at 452-53, 363 S.E.2d at ___.
3. Thompson has failed to prove by the greater weight of the evidence that Officer Laws was negligent in the exercise of reasonable care by failing to anticipate the attack by Gravely under the circumstances of this civil action or failed to take proper precautions to safeguard Thompson under the facts of this case. N.C. Gen. Stat. § 143-291(a).
4. NCDOC's defense that Thompson's exclusive remedy is confined to the Workers' Compensation Act as Thompson was an "employee" of NCDOC at the time of the attack is not well taken. NCDOC failed to prove by the greater weight of the evidence that Thompson was an "employee" of NCDOC at the time of the attack by Gravely. The Workers' Compensation Act requires "employment" as a jurisdictional requirement. N.C. Gen. Stat. § 97-2.
 ***********
The foregoing Findings of Fact and Conclusions of Law engender the following:
 ORDER
1. Thompson's claim must be and is hereby DISMISSED WITH PREJUDICE.
2. No costs are taxed as Thompson was permitted to file this civil action in forma paupers.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN
PTY/db