MICHAEL JENKINS, Employee, Plaintiff v. PUBLIC SERVICE COMPANY OF NORTH CAROLINA, Employer, SELF-INSURED CONSTITUTION STATE SERVICE COMPANY, Servicing Agent, Defendants

No. COA98-1072

(Filed 3 August 1999)

1. **Workers' Compensation— testimony of doctor—based on employee's subjective complaints**

    The Industrial Commission did not err in concluding plaintiff-employee's second doctor did not give incompetent testimony based on "mere speculation." Although the Industrial Commission could have given the doctor's opinion less weight due to the fact that it was based on plaintiff's subjective complaints rather than on objective testing, it was not required to do so.

2. **Workers' Compensation— failure to properly complete Form 28U not reversible error—not the authorized treating physician**

    Plaintiff-employee's failure to submit a "properly completed" Form 28U did not require reversal because the Industrial Commission ultimately found that plaintiff's return to work was a "failed return to work" based on his work-related compensable injury. The form was improperly completed because although the doctor who signed it was plaintiff's initial authorized treating physician, the doctor had not treated plaintiff for nearly two years at the time of plaintiff's trial return to work as a meter reader and another doctor was currently plaintiff's authorized treating physician.

3. **Workers' Compensation— private communication—treating physician and rehabilitation professional—exclusion of testimony not required—not an agent of defendant**

    The Industrial Commission erred in excluding or assigning no weight to the authorized treating physician's testimony pursuant to *Salaam v. N.C. Dept. of Transp.*, 122 N.C. App. 83 (1996),

because there is no evidence that the rehabilitation professional is an agent of defendant barring the rehabilitation professional's communication with plaintiff's treating physician.

**4. Workers' Compensation— private communication—treating physician and rehabilitation professional—exclusion of testimony not required—Industrial Commission's rules—broad discretion**

The Industrial Commission erred in excluding or assigning no weight to the authorized treating physician's testimony based on the Commission's rules merely because he communicated with a rehabilitation professional outside plaintiff's presence without plaintiff's consent. Although the Industrial Commission's rules indicate a strong preference that plaintiff-employee be present during conferences between the treating physician and the rehabilitation professional, the rules expressly give the treating physician broad discretion to confer with the rehabilitation professional outside plaintiff's presence with or without plaintiff's consent.

Judge WYNN dissenting.

Appeal by defendants from Opinion and Award filed 1 June 1998 by the North Carolina Industrial Commission. Heard in the Court of Appeals 11 May 1999.

*Law Offices of Edward Jennings, by Griffis C. Shuler, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Mel J. Garofalo and Shelley Walters Coleman, for defendant-appellants.*

GREENE, Judge.

Public Service Company of North Carolina, Inc. (PSC) and its servicing agent (collectively, Defendants) appeal from the Opinion and Award of the North Carolina Industrial Commission (Commission) in favor of Michael E. Jenkins (Plaintiff).

Plaintiff received a compensable back injury on 25 October 1993 while working for PSC. A Form 21 "Agreement for Compensation for Disability" was entered into by the parties, and pursuant to that agreement, Plaintiff received temporary total disability compensation. Plaintiff's authorized treating physician immediately following

his injury, R. Mark Rodger, M.D. (Dr. Rodger), performed surgery on Plaintiff in 1993. Early in 1994, Plaintiff was referred to J. Robinson Hicks, M.D. (Dr. Hicks), who then became Plaintiff's authorized treating physician.

On 7 February 1996, Plaintiff attempted a trial return to work with PSC as a meter reader. Plaintiff worked as a meter reader for approximately one week. Plaintiff then filled out a Form 28U, "Employee's Request that Compensation be Reinstated After Unsuccessful Trial Return to Work," because he felt he could "not physically perform the job duties of a meter reader. The job requires constant walking, driving, and getting in and out of a truck. I am in severe pain." On 22 February 1996, Plaintiff took the Form 28U and x-rays to his authorized treating physician, Dr. Hicks, for certification that his return to work had been unsuccessful due to his disability. Plaintiff testified:

> [Dr. Hicks] looked at [the Form 28U] and took it out and talked to my rehab nurse out in the hall, come back. First he was going to sign it, I thought, and he said, "Well, I need to talk to your rehab nurse about it." So he took it out in the hall and talked to her a few minutes, come back in and handed it back to me and said he couldn't sign it.

Dr. Hicks testified that prior to discussing a trial return to work with Plaintiff, his test results had not shown signs of symptom magnification; however, "about three weeks after [they] discussed for the first time returning to work," Plaintiff's test results suggested symptom magnification. Dr. Hicks felt the meter reader position was "appropriate" for Plaintiff and "had no medical reason for keeping [Plaintiff] out of work"; he therefore refused to sign the Form 28U. Dr. Hicks further testified that he had no recollection of any conversation with Nancy Lipscomb, R.N. (Nurse Lipscomb), Plaintiff's rehabilitation professional, prior to declining to sign Plaintiff's Form 28U. Dr. Hicks stated: "I sometimes talk to the rehabilitation nurse outside the presence of a patient, but I have no idea in this particular case whether I did, and if I did, what the subject was." Dr. Hicks noted that it would not have been unusual for him to confer with a patient's rehabilitation professional outside the patient's presence.

In her 24 March 1996 Progress Report, Nurse Lipscomb noted:

> On 2/22/96, I met [Plaintiff] at Dr. Hicks' office. From [Plaintiff] I learned that he is not working now, and he walks with a limp. . . .

[Plaintiff] was examined by Dr. Hicks by himself. Dr. Hicks did discuss with me that the patient brought a paper to him today to have him reinstate his Worker's [sic] Compensation. Dr. Hicks did state he can't take him out of work, as he needs to know why, and [Plaintiff] was given a consent paper to sign, so that Dr. Hicks' office could obtain [Plaintiff's medical records from other physicians he had seen], and then perhaps [Dr. Hicks] could help him. Dr. Hicks did tell the patient that he would write to the Industrial Commission to the effect that [Plaintiff] is having so much pain that he says he is unable to work. Dr. Hicks did plan to get another [functional capacity evaluation]. Dr. Hicks did state that he would write to the other doctors to obtain records and the x-rays to see if he would concur with their diagnosis. However, the patient did not sign the consent [for the other doctors to release his medical records to Dr. Hicks]. . . .

Following Dr. Hicks' refusal to sign the Form 28U, Plaintiff took the Form 28U to Dr. Rodger. Dr. Rodger had not seen Plaintiff as a patient in nearly two years, since 11 March 1994. Dr. Rodger testified, in relevant part, as follows:

I did some x-rays, and my best supposition was that it was this problem at L5-S1. A lot of what, you know, what he can and can't do, I have to rely on what the patient tells me. You know, I don't have hard documentation of what he is being observed physically to be able to do, like a functional capacity assessment or something. I didn't have access to that. So my interpretation is subjective and based on what the patient tells me. . . . He convinced me that he wasn't able to do it. . . . Just coming to tell me you can't do it doesn't always mean that I agree that you can't do it. . . . I have to be convinced, and he was able to convince me.

Plaintiff's attorney asked Dr. Rodger if he had an "opinion satisfactory to yourself and to a reasonable degree of medical certainty as to what specific restrictions or limitations [Plaintiff] has as a result of his physical condition?" Dr. Rodger testified that his "impression was that [Plaintiff] was functionally unable to do any significant lifting and probably required frequent position changes for relief of his back pain." Dr. Rodger x-rayed Plaintiff, and testified the x-rays revealed that Plaintiff "had a good fusion. It looked okay to me." Dr. Rodger stated that "the history [he] had about [Plaintiff's] fusion . . . was from [Plaintiff] and from supposition and guesswork based on his x-rays." Dr. Rodger further testified:

I don't think I took a detailed history of the actual occupation [Plaintiff] was involved with [(*i.e.*, the meter reader position)]. We did talk in general terms about the fact that he had gone back to a light-duty job, but hadn't been able to tolerate it. The actual details of how much time he spent sitting, standing, lifting, I don't have it detailed in the chart. And I can't remember if I asked him specifically about that or not.

Dr. Rodger testified that "in [his] opinion, he couldn't do the job that they wanted him to do." Dr. Rodger did not require Plaintiff to perform objective tests to determine whether his complaints of pain were exaggerated or nonphysiogenic; rather, because he believed Plaintiff's subjective complaints, he signed Plaintiff's Form 28U certifying that Plaintiff's return to work had been unsuccessful due to his injury.

The Commission gave "no weight" to the testimony of Dr. Hicks, finding that Dr. Hicks "left at least the appearance of undue influence by the rehabilitation nurse by stepping outside the presence of the plaintiff and into the presence of the rehabilitation nurse before saying whether or not he would sign the Form 28U." In addition, the Commission found "Dr. Rodger to be the proper party, under the circumstances, to sign the Form 28U," and concluded Plaintiff had complied with its rule 404A requiring the Form 28U to be signed by the authorized treating physician. Finally, based on the evidence before it, the Commission found Plaintiff's trial return to work in the meter reader position "was a failed return to work." Accordingly, the Commission, with one commissioner dissenting, awarded Plaintiff temporary total disability from 25 October 1993 through 4 February 1996, partial disability from 5 February 1996 through 12 February 1996 (during his trial return to work at lower wages than his pre-injury employment), and temporary total disability from 19 February 1996 "until further order of the Commission."

---

The issues are whether: (I) Dr. Rodger's testimony was incompetent because it was based on "mere speculation"; (II) Dr. Rodger could not certify that Plaintiff's return to work was unsuccessful because he was not Plaintiff's authorized treating physician; and (III) private conversations between the authorized treating physician and the rehabilitation professional without the employee's consent are permissible.

I

**[1]** Defendants first contend the testimony of Dr. Rodger was incompetent because it was based on "mere speculation."

In this case, it is clear from the record that Dr. Rodger based his opinion that Plaintiff could not perform the meter reader position primarily on Plaintiff's subjective complaints. It does not follow, however, that Dr. Rodger's opinion was based on "mere speculation." *See, e.g., Ballenger v. Burris Industries*, 66 N.C. App. 556, 567, 311 S.E.2d 881, 887 (expert testimony as to causation is incompetent if based on "mere speculation and possibility"), *disc. review denied*, 310 N.C. 743, 315 S.E.2d 700 (1984). A physician's diagnosis often depends on the patient's subjective complaints, and this does not render the physician's opinion incompetent as a matter of law. Dr. Rodger was aware of Plaintiff's history to a certain extent because he had been Plaintiff's initial treating physician for his back injury, and Dr. Rodger testified he was "convinced" that Plaintiff was unable to tolerate the meter reader position due to his injury. Dr. Rodger further testified that, in his medical opinion, Plaintiff could not perform the job. In addition, Dr. Rodger's testimony that he derived his *update of Plaintiff's history* from Plaintiff and from "supposition and guesswork" following his review of Plaintiff's x-rays does not render his testimony incompetent, because the method by which Dr. Rodger derived his update of Plaintiff's history is a separate question from his determination of Plaintiff's *inability to perform the meter reader position*. On that question, Dr. Rodger was clear: in his medical opinion, Plaintiff could not perform the meter reader job. Although the Commission could have given Dr. Rodger's opinion less weight due to the fact that it was based on Plaintiff's subjective complaints rather than objective testing, it was not required to do so. *See Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (holding the Commission "is the sole judge of the credibility of the witnesses and the weight to be given their testimony").

II

**[2]** Defendants further contend Dr. Rodger could not certify that Plaintiff's return to work was unsuccessful due to his compensable injury because Dr. Rodger was not Plaintiff's authorized treating physician. Although we agree with Defendants that Dr. Rodger was not the appropriate party to sign Plaintiff's Form 28U, this does not constitute reversible error at this stage of the proceedings.

Section 97-32.1 provides that an employee may "attempt a trial return to work." N.C.G.S. § 97-32.1 (Supp. 1998). "If the trial return to work is unsuccessful, the employee's right to continuing compensation under G.S. 97-29 [for total incapacity] shall be unimpaired . . . ." *Id.* The determination of whether an employee's trial return to work was unsuccessful is made by the Commission. *See* N.C.G.S. § 97-84 (1991) (determination of disputed issues). To expedite reinstatement of an employee's compensation pending a determination by the Commission of whether an employee's return to work was unsuccessful, the Commission's rules provide that an employee may file a Form 28U "Request that Compensation be Reinstated." Workers' Comp. R. N.C. Indus. Comm'n 404A(2), 1999 Ann. R. N.C. 690. The Form 28U must contain a certification by the employee's "authorized treating physician" that, in the physician's medical opinion, the employee is unable to continue with the trial return to work because of his compensable injury. *Id.* Upon the filing of a "properly completed" Form 28U, the defendant-employer "shall forthwith resume payment of compensation for total disability." *Id.* If it is thereafter determined by the Commission that the employee's trial return to work was not unsuccessful due to his injury, then the defendant-employer is entitled to a credit for sums paid pursuant to the Form 28U. Workers' Comp. R. N.C. Indus. Comm'n 404A(4), 1999 Ann. R. N.C. 691.

An employee's "authorized treating physician" is generally selected by the employer. *See Schofield v. Tea Co.*, 299 N.C. 582, 586-87, 264 S.E.2d 56, 60 (1980). If the employee prefers, however, he may select, subject to the Commission's approval and authorization, a new physician. *Id.*; *see also Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 207, 472 S.E.2d 382, 387 (noting that approval of a new physician is within the Commission's discretion), *cert. denied*, 344 N.C. 629, 477 S.E.2d 39 (1996). Although the Commission's approval and authorization need not be obtained prior to seeking the services of a new treating physician, it must be obtained within a reasonable time after the employee has selected the new physician. *Schofield*, 299 N.C. at 593, 264 S.E.2d at 63. Where an employee seeks retroactive authorization of a new treating physician, the Commission "must make findings relative to whether such approval was sought . . . within a reasonable time." *Id.* at 594, 264 S.E.2d at 64.

In this case, Plaintiff returned to work on 7 February 1996. Plaintiff worked approximately one week, and then submitted a Form

28U, signed by Dr. Rodger, requesting reinstatement of his total disability compensation due to an unsuccessful return to work. Although Dr. Rodger had initially been Plaintiff's authorized treating physician, Plaintiff had not been treated by Dr. Rodger for nearly two years at the time of Plaintiff's trial return to work as a meter reader. Plaintiff's authorized treating physician at that time was Dr. Hicks. Accordingly, Plaintiff's Form 28U was not "properly completed" when Plaintiff obtained the certification of Dr. Rodger. Dr. Rodger was not Plaintiff's authorized treating physician, and there is no indication in the record that Plaintiff, at any time either before or after having Dr. Rodger sign his Form 28U, sought the Commission's approval of Dr. Rodger as his authorized treating physician. The Commission ultimately found, however, based on competent evidence in the record, that Plaintiff's return to work was "a failed return to work" due to his work-related compensable injury. It follows that Plaintiff's failure to submit a "properly completed" Form 28U, which would merely have reinstated compensation pending the Commission's determination on this issue, does not require reversal.

III

[3] Finally, Defendants contend the Full Commission erred in excluding, or assigning no weight to, Dr. Hicks' testimony based solely on his conversation with the rehabilitation professional assigned to Plaintiff's case outside Plaintiff's presence and without his consent.

The defendant and defense counsel are precluded from engaging in *ex parte* communications with the plaintiff's nonparty treating physician without the plaintiff's consent. *Salaam v. N.C. Dept. of Transportation*, 122 N.C. App. 83, 87-88, 468 S.E.2d 536, 538-39 (1996) (quoting *Crist v. Moffatt*, 326 N.C. 326, 336, 389 S.E.2d 41, 47 (1990)), *disc. review improvidently allowed*, 345 N.C. 494, 480 S.E.2d 51 (1997). It follows that, if the rehabilitation professional is an agent of the defendant, her communication with the plaintiff's treating physician is also barred by *Salaam*.

Rehabilitation professionals, as defined by the Commission, are "case managers and coordinators of medical rehabilitation services and/or vocational rehabilitation services." N.C. Indus. Comm'n Rules for Rehabilitation Professionals I(A), 1999 Ann. R. N.C. 745.[1] A reha-

---

1. "The Commission may adopt utilization rules and guidelines . . . for vocational rehabilitation services and other types of rehabilitation services." N.C.G.S. § 97-25.5 (Supp. 1998).

JENKINS v. PUBLIC SERVICE CO. OF N.C.

[134 N.C. App. 405 (1999)]

bilitation professional's case management services include, but are not limited to:

> [C]ase assessment, including a personal interview with the injured worker; development, implementation and coordination of a care plan with health care providers and with the worker and family; evaluation of treatment results; planning for community re-entry; return to work with the employer of injury and/or referral for further vocational rehabilitation services.

*Id.*, at I(D), 1999 Ann. R. N.C. 745. A rehabilitation professional's medical rehabilitation services include "the planning and coordination of health care services appropriate to achievement of the goal of medical rehabilitation." *Id.* Rehabilitation professionals are required to "exercise independent professional judgment in making and documenting recommendations for medical and vocational rehabilitation," *id.*, at VI(B), 1999 Ann. R. N.C. 748, and "have an obligation to provide unbiased, objective opinions," *id.*, at V(D), 1999 Ann. R. N.C. 747. In addition, rehabilitation professionals are bound by the ethical rules of their field of certification. *Id.*, at V(A), 1999 Ann. R. N.C. 747. Finally, the Commission's rules provide that rehabilitation professionals "shall not accept any compensation or reward from any source as a result of settlement." *Id.*, at VI(E)(3), 1999 Ann. R. N.C. 748. It follows from all of the above that the role of a rehabilitation professional is not that of an agent for either the defendant or the plaintiff, but of a neutral and unbiased proponent of the plaintiff's rehabilitation. Accordingly, *Salaam* does not, as a matter of law, prohibit communication between the rehabilitation professional and the plaintiff's non-party treating physician. Of course, where evidence is presented that the rehabilitation professional is the agent of the defendant rather than a neutral and unbiased professional, *Salaam* will apply. We will not assume, however, without supporting evidence, that a rehabilitation professional is acting as the agent of the defendant, because acting as the defendant's agent would be unethical and in violation of the Commission's rules.[2]

In this case, the evidence supports the Commission's finding that Dr. Hicks and Nurse Lipscomb communicated outside Plaintiff's pres-

---

2. We also note that a rehabilitation professional "may be removed from a case upon motion by either party for good cause shown or by the Industrial Commission in its own discretion." N.C. Indus. Comm'n Rules for Rehabilitation Professionals X(A), 1999 Ann. R. N.C. 750. It follows that a plaintiff who believes the rehabilitation professional is behaving unethically or in violation of the Commission's rules may seek her removal.

ence and without his consent. Plaintiff testified that Dr. Hicks left his presence to speak with Nurse Lipscomb; Dr. Hicks testified that, although he had no recollection of the conversation, such a conversation would not have been unusual; and Nurse Lipscomb noted the substance of her conversation with Dr. Hicks in her Progress Report, as required by the Commission's rules. No evidence was presented, however, which would show that Nurse Lipscomb was an agent of Defendants. Accordingly, *Salaam* does not require exclusion of any of Dr. Hicks' testimony based on his private conversation with Nurse Lipscomb.

[4] The remaining question is whether the rules of the Commission prohibit communication between a rehabilitation professional and the plaintiff's treating physician. The Commission's rules expressly provide "no right to confidential communication between the [rehabilitation professional], the parties, the physician, or the health-care providers." N.C. Indus. Comm'n Rules for Rehabilitation Professionals VII(E), 1999 Ann. R. N.C. 749; *see also* N.C.G.S. § 97-27 (1991) ("[N]o fact communicated to or otherwise learned by any physician . . . shall be privileged in any workers' compensation case . . . ."). The rules further provide:

> If the [rehabilitation professional] wishes to obtain medical information in a personal conference with the physician following an examination, the [rehabilitation professional] should reserve with the physician sufficient appointment time for a conference. The worker must be offered the opportunity to attend this conference with the physician. *If the worker or the physician does not consent to a joint conference, or if in the physician's opinion it is medically contraindicated for the worker to participate in the conference*, the [rehabilitation professional] will note this in his or her report and *may in such case communicate directly with the physician* and shall report the substance of the communication.

N.C. Indus. Comm'n Rules for Rehabilitation Professionals VIII(C), 1999 Ann. R. N.C. 749 (emphases added). Although the Commission's rules indicate a strong preference that the plaintiff be present during conferences between the treating physician and the rehabilitation professional, the rules expressly give the treating physician broad discretion to confer with the rehabilitation professional outside the plaintiff's presence whether or not the plaintiff has consented. Accordingly, the fact that a treating physician and a rehabilitation professional have communicated outside the plaintiff's presence

without the plaintiff's consent, without more, does not violate the Commission's rules. Dr. Hicks' private conversation with Nurse Lipscomb therefore does not require exclusion of his testimony, and likewise does not support disregarding his testimony or assigning it no weight.[3] The Commission's apparent misapprehension of the applicable law on this issue requires us to remand for reconsideration of Plaintiff's case. *See, e.g., Teer Co. v. Highway Commission*, 265 N.C. 1, 14, 143 S.E.2d 247, 257 (1965) ("[W]hen it appears that the Industrial Commission has found the facts under a misapprehension of the applicable law, the cause will be remanded for findings of fact by the Industrial Commission upon consideration of the evidence in its true legal light."); *Cauble v. The Macke Co.*, 78 N.C. App. 793, 795, 338 S.E.2d 320, 322 (1986).

Reversed and remanded.

Judge MARTIN concurs.

Judge WYNN dissents in part.

Judge WYNN dissenting in part.

I disagree with the majority's holding that the Full Commission erred in assigning no weight to Dr. Hicks' testimony. In essence, the majority failed to consider whether competent evidence existed to support the Commission's finding that Dr. Hicks' conversation with the rehabilitation nurse gave "at least" the appearance of undue influence.

In *Adams v. AVX Corp.*, 349 N.C. 676, 509 S.E.2d 411 (1998), our Supreme Court reiterated the limited role of this Court in reviewing decisions of the Industrial Commission. There, the Supreme Court instructed us that the Industrial Commission is the fact-finding body, and is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See id.* Thus, the findings of fact made by the Commission are conclusive on appeal when supported by competent evidence, even when there is evidence to support a finding to the contrary. *See Plummer v. Henderson Storage Company*, 118 N.C. App. 727, 456 S.E.2d 886 (1995).

---

3. Of course, the Commission may find that Dr. Hicks' testimony is entitled to no weight, or less weight, for permissible reasons, as the Commission is the judge of the weight to be assigned to the evidence before it.

Further, the Supreme Court stated that this Court " 'does not have the right to weigh the evidence and decide the issue on the basis of its weight. [In fact,] [t]he court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Adams*, 349 N.C. at 681, 509 S.E.2d at 414 (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)).

Here, the pertinent findings that relate to Dr. Hicks' conversation with the rehabilitation nurse are:

18. The Commission gives great weight to the opinions of Drs. Rodger and Grobler in their treatment of plaintiff because their treatment accomplished the most toward solving plaintiff's medical problem. The Full Commission gives no weight to the evidence of Dr. Hicks who left at least the appearance of undue influence by the rehabilitation nurse by stepping outside the presence of the plaintiff and into the presence of the rehabilitation nurse before saying whether or not he would sign the Form 28U.

19. . . . The Deputy Commission also erred in not considering the possibility of undue influence upon Dr. Hicks by the medical rehabilitation nurse, who had apparently had a private conversation with Dr. Hicks just prior to his initial refusal to sign the Form 28U. . . .

These findings state that the Full Commission considered the opinions of Drs. Rodger, Grobler, and Hicks, but chose not to give any weight to Dr. Hicks' testimony. The evidence shows that neither Dr. Rodger nor Dr. Grobler consulted with the rehabilitation nurse prior to making their medical decisions. Their medical conclusions favoring the plaintiff indeed are some evidence supporting the Commission's findings that there was "left at least" a "possibility of undue influence upon Dr. Hicks by the medical rehabilitation nurse."

Moreover, Dr. Hicks testified that the plaintiff informed him that two physicians in Statesville had seen "something on [the plaintiff's] x-ray that would explain his pain." According to plaintiff's testimony, Dr. Hicks refused to review the accompanying x-rays at the time that the plaintiff presented the Form 28U for his approval. This again is some evidence to support the Commission's findings.

Further, the plaintiff testified that he thought that Dr. Hicks was going to sign the form prior to his conversation with the rehabilitation

nurse. He testified that following this conversation, Dr. Hicks handed the plaintiff the form and informed him that he could not sign it. This, too, is some evidence supporting the Commission's findings.

Despite Dr. Hicks' refusal to sign the Form 28U, he testified that in his opinion the plaintiff would be expected to live with some form of pain for the rest of his life which would limit certain jobs that he could perform. Additionally, Dr. Hicks admitted that he had no reason not to believe the plaintiff's complaints of pain that he experienced while walking, standing, and sitting—which are all activities the plaintiff was required to perform in his position as a meter reader.

Finally, the Commission is the fact-finding body for matters arising under the Workers Compensation Act. As such, it considers numerous claims involving rehabilitation nurses. The Commission, not this Court, best understands the function of those specialists and their roles.

As long as there was any competent evidence to support the possibility of undue influence upon Dr. Hicks, the Commission's findings on this basis are conclusive on appeal. *See Plummer,* 118 N.C. App. at 730, 456 S.E.2d at 888. And while contrary evidence existed, competent evidence supported the finding that Dr. Hicks' consultation with the rehabilitation nurse prior to agreeing to sign the Form 28U created "at least the appearance of undue influence." Accordingly, I dissent.