BRYANT, Judge.
 

 *269
 
 Where defendants failed to rebut the presumption that plaintiff's 2013 shoulder injury was causally related to her compensable 2007 shoulder injury, we affirm the Industrial Commission's conclusion and award of disability compensation. Where defendants failed to reinstate plaintiff's temporary total benefits following defendants' admission of plaintiff's right to compensation and notice of her unsuccessful trial return to work and where defendants further failed to file with the Industrial Commission a request to terminate plaintiff's disability compensation, defendants are subject to a ten percent penalty for payments due to plaintiff following her unsuccessful trial return to work. Where the Commission acted within its discretion by denying plaintiff an award of attorney fees and costs, we affirm the denial of plaintiff's request.
 

 On 12 May 2007, plaintiff Celia A. Bell was employed by defendant-employer Goodyear Tire and Rubber Company as a tire builder. When pulling and twisting a tire carcass, she felt a "pop" in her right shoulder. Plaintiff was examined by Dr. Christopher Barnes, who "performed an arthroscopic subacromial decompression and arthroscopic superior labrum anterior and posterior (SLAP) lesion repair" to her right shoulder. Plaintiff filed a Form 18, Notice of Accident to Employer and Claim of Employee regarding the injury to her right shoulder. Defendant entered a Form 26A, Employer's Admission of Employee's Right to Permanent Disability which was approved by the Commission on 21 December 2008. After defendant filed three Form 60s, Employer's Admission of Employee's Right to Compensation, altering the compensation amount and the body part injured, Deputy Commissioner Chrystal Redding Stanback filed an Opinion and Award in which she concluded that plaintiff sustained a "compensable injury to her
 
 right shoulder
 
 pursuant to
 
 N.C. Gen. Stat. § 97-2
 
 (6), and concluded Plaintiff was entitled to payment of future necessary medical compensation for her compensable injury pursuant to
 
 N.C. Gen. Stat. § 97-25.1
 
 ." (Emphasis added).
 

 On 9 January 2010, plaintiff again injured her right shoulder at work. The parties entered into a Consent Order approved by the Industrial Commission, wherein "the parties agree[d] that the ... right shoulder exacerbation injury [was] a continuance of the admittedly compensable right shoulder injury sustained on May 12, 2007."
 

 Following the 2010 incident, plaintiff was examined by Dr. Robert Carroll, a physician board certified in orthopedics, specializing in shoulder treatment.
 

 Dr. Carroll ... probed the biceps tendon and noted a suture anchor which had grasped tissue from the middle
 
 *270
 
 glenohumeral ligament. Dr. Carroll then debrided the scar tissue at the suture site, released the glenohumeral ligament and removed the suture material. Dr. Carroll testified that Plaintiff's symptoms were likely coming from the acromioclavicular joint and the rotator cuff but it was also possible her pain was due to the biceps tendon.
 

 *146
 
 On 14 March 2012, Dr. Carroll noted that plaintiff had achieved maximum medical improvement (MMI) and assigned her permanent physical restrictions to avoid carrying over 45 pounds, lifting more than 25 pounds from waist to shoulder, and over 40 pounds from waist to floor. However, when defendant could not provide plaintiff a job within those physical restrictions, plaintiff did not return to work.
 

 On 21 December 2012, plaintiff reported to Dr. Carroll after she felt pain in her right shoulder while raking her yard. "Dr. Carroll assessed right shoulder pain and possible proximal biceps tendinitis." He prescribed a steroid taper and pain medication.
 

 On 19 August 2013, plaintiff returned to work in a position that defendant described as within her permanent physical restrictions. On 6 September, plaintiff was performing heavy lifting when, again, she felt a "pop" in her right shoulder. Plaintiff sought treatment at a clinic later that day. On 9 September, plaintiff was seen by Dr. Carroll. "Dr. Carroll found limited and uncomfortable internal rotation and relative weakness of the rotator cuff." Plaintiff was assigned restrictions of no lifting or carrying over 5 pounds and no pulling or pushing over 10 pounds. But because defendants could not accommodate these restrictions, plaintiff did not return to work until 3 October 2013, when Dr. Carroll assigned new physical restrictions: "no lifting or carrying over 20 pounds, no pulling or pushing over 30 pounds, no work over shoulder height, and the ability to take 10-minute breaks every two hours."
 

 Back on 12 September 2013, defendant filed a Form 28T, Notice of Termination of Compensation by Reason of Trial Return to Work, which indicated that payments of temporary total disability benefits to plaintiff were terminated on 18 August 2013 due to plaintiff's trial return to work on 19 August 2013. On 16 September 2013, defendant filed a Form 62, Notice of Reinstatement or Modification of Compensation. However, defendant "pulled and destroyed" the form and failed to reinstate plaintiff's disability compensation.
 

 Plaintiff returned to work on 3 October and continued through 23 October 2013, when she again returned to Dr. Carroll with complaints of shoulder pain. Plaintiff was diagnosed with "proximal biceps tendinitis"
 

 *271
 
 in her right shoulder. Given new work restrictions, which defendant was unable to accommodate, plaintiff did not return to work after 23 October 2013 and remained out of work through 27 May 2015 (the date this matter was heard before the North Carolina Industrial Commission).
 

 On 14 October 2013, plaintiff filed a motion with the Industrial Commission to request reinstatement of temporary total disability compensation. Defendants challenged whether "[p]laintiff's current complaints resulting in work restrictions [were] causally related to the accepted May 12, 2007 injury or to the documented lifting incident without accident of September 6, 2012."
 

 The matter came before a deputy commissioner who concluded that "[t]he medical opinion testimony in this case [was] insufficient to establish that [p]laintiff's biceps tendon is causally related to Plaintiff's original right shoulder injury in 2007 or subsequent re-injury in 2010[,]" and denied plaintiff's claim for additional temporary total disability compensation benefits stemming from the 6 September 2013 incident. Plaintiff appealed to the Full Commission ("the Commission").
 

 On 3 September 2015, the Commission filed an Opinion and Award reversing the opinion and award of the deputy commissioner. In its findings of fact, the Commission noted testimony from three physicians (Drs. Kevin Speer, Christopher Barnes, and Carroll) that was equivocal as to whether plaintiff's 6 September 2013 injury to her biceps tendon was causally related to her admittedly compensable 12 May 2007 right shoulder injury. However, the Commission noted that due to the
 
 Parsons
 
 presumption, a rebuttable presumption that additional medical treatment is related to an initial compensable injury (as discussed in
 
 Parsons v. Pantry, Inc.
 
 ,
 
 126 N.C.App. 540
 
 ,
 
 485 S.E.2d 867
 
 (1997) ), defendants had the burden of proof to show that the September 2013 injury and treatment was not directly related to the 2007 compensable injury. The Commission concluded defendants failed to rebut the presumption. The Commission thus determined
 
 *147
 
 that plaintiff's attempted trial return to work was unsuccessful due to her 12 May 2007 injury. Defendants Goodyear Tire and Rubber Company and Liberty Mutual Insurance Company were ordered to pay plaintiff temporary total disability benefits for the stated periods from 9 September to 5 October 2013 and from 24 October 2013 to the date of hearing, and until plaintiff returned to work or otherwise ordered by the Commission.
 

 Defendants and plaintiff both appeal.
 

 _________________________
 

 *272
 
 On appeal, (I) defendants argue the Commission erred by concluding plaintiff's shoulder injury was causally related to her compensable work injury. On cross-appeal, plaintiff argues the Commission erred by failing to (II) conclude that defendants were required to immediately reinstate compensation benefits upon learning of plaintiff's failed trial return to work and (III) assess a late penalty and impose sanctions as a result.
 

 Standard of Review
 

 The Commission is the ultimate finder of fact in a workers' compensation case.
 
 Adams v. AVX Corp.
 
 ,
 
 349 N.C. 676
 
 , 680,
 
 509 S.E.2d 411
 
 , 413 (1998). This Court reviews an award from the Commission to make two determinations: "(1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact."
 
 Clark v. Wal-Mart
 
 ,
 
 360 N.C. 41
 
 , 43,
 
 619 S.E.2d 491
 
 , 492 (2005) (citation omitted). On appeal, findings of fact may be set aside if there is a complete lack of competent evidence to support them.
 
 Young v. Hickory Bus. Furniture
 
 ,
 
 353 N.C. 227
 
 , 230,
 
 538 S.E.2d 912
 
 , 914 (2000). Even if there is evidence to support a contrary finding, the Industrial Commission's findings of fact are conclusive on appeal if they are supported by competent evidence.
 
 Sanderson v. Ne. Constr. Co.
 
 ,
 
 77 N.C.App. 117
 
 , 121,
 
 334 S.E.2d 392
 
 , 394 (1985) (citation omitted). The Commission's conclusions of law are reviewed
 
 de novo
 
 .
 
 Griggs v. E. Omni Constructors
 
 ,
 
 158 N.C.App. 480
 
 , 483,
 
 581 S.E.2d 138
 
 , 141 (2003).
 

 Defendants' appeal
 

 I
 

 Defendants argue that the Commission erred by concluding plaintiff's shoulder injury was causally related to her compensable 12 May 2007 work injury. Defendants contend the injury sustained on 6 September 2013 was to the biceps tendon and assert that it is a part of the body different from the superior labrum and rotator cuff plaintiff injured on 12 May 2007. Thus, defendants argue the Commission erred by applying the
 
 Parsons
 
 presumption and, as a result, improperly shifted the burden of proof to defendants to disprove the causal relationship between the injuries. We disagree.
 

 "In a worker's compensation claim, the employee has the burden of proving that his claim is compensable. An injury is compensable as employment-related if any reasonable relationship to employment exists."
 

 *273
 

 Holley v. ACTS, Inc.
 
 ,
 
 357 N.C. 228
 
 , 231,
 
 581 S.E.2d 750
 
 , 752 (2003) (citations omitted). Once an employee has established a causal relationship between a workplace accident and the injury, an employer is required to pay future medical treatment directly related to the original compensable injury.
 
 Parsons
 
 ,
 
 126 N.C.App. at 541-42
 
 ,
 
 485 S.E.2d at 869
 
 . "Where a plaintiff's injury has been proven to be compensable, there is a presumption that the additional medical treatment is directly related to the compensable injury. The employer may rebut the presumption with evidence that the medical treatment is not directly related to the compensable injury."
 
 Perez v. Am. Airlines/AMR Corp.
 
 ,
 
 174 N.C.App. 128
 
 , 135,
 
 620 S.E.2d 288
 
 , 292 (2005) (citations omitted) (citing
 
 Parsons
 
 ,
 
 126 N.C.App. at 542
 
 ,
 
 485 S.E.2d at
 
 869 );
 
 see also
 

 id.
 

 at 136 n.1,
 
 620 S.E.2d at
 
 293 n.1 ("We can conceive of a situation where an employee seeks medical compensation for symptoms completely unrelated to the compensable injury. But the burden of rebutting the presumption of compensability in this situation, although slight, would still be upon the employer.").
 

 Defendants accepted plaintiff's 12 May 2007 right shoulder injury as compensable, and on 28 October 2009, Deputy Commissioner
 
 *148
 
 Stanback issued an opinion and award concluding there was a "substantial risk of the necessity of future medical compensation for Plaintiff for her compensable injury." Defendants argue the Commission erred in applying the
 
 Parson
 

 's
 
 presumption because plaintiff sustained a new injury to a different body part. We disagree. Defendants accepted the compensability of the injury to plaintiff's right shoulder and will not be heard to say now that the right bicep tendon, a part of the right shoulder complex, is not connected to the right shoulder. Defendants challenge to the Commission's application of the
 
 Parson
 

 's
 
 presumption must fail, and defendants properly had the burden of proof to rebut the presumption that a causal relationship existed between the injuries.
 

 Before this Court, defendants contest the causal relationship between plaintiff's 12 May 2007 shoulder injury and the proximal biceps tendinitis diagnosed after plaintiff's 6 September 2013 incident. They assert that they have met the burden of proof that plaintiff's bicep injury is causally related to her 6 September 2013 incident, identifying proximal biceps tendinitis, and not causally related to the compensable injury occurring 12 May 2007.
 

 The Commission reviewed testimony from three physicians, each of whom examined plaintiff: Dr. Carroll, Dr. Barnes, and Dr. Speer. After reviewing the testimony of Dr. Barnes, a board-certified orthopedic
 
 *274
 
 surgeon specializing in treatment of upper extremities, the Commission made the following unchallenged finding of fact
 
 [1]
 
 :
 

 [Dr. Barnes testified that a] superior labral tear is repaired at the location where the biceps tendon attaches to the shoulder socket. Once the labrum is repaired, it is not as strong as it was prior to the tear, in part because it fills with scar tissue. The superior labral repair [conducted as a result of the 12 May 2007 injury] placed Plaintiff at a higher risk of having an injury to the biceps tendon.
 

 And though defendants also challenge the Commission's finding of fact regarding Dr. Carroll's testimony, in their brief to this Court, defendants acknowledge the viewpoint expressed by both Drs. Speer and Barnes "that Dr. Carroll is the provider in the best position to give an opinion as [to] the state of Plaintiff's shoulder between the 2011 surgery and the 6 September 2013 Urgent Care presentation." We note in pertinent part that the finding of fact based on Dr. Carroll's testimony is consistent with the Commission's unchallenged finding of fact regarding Dr. Barnes's testimony.
 

 [Dr. Carroll] went on to testify that the biceps tendon is part of the "complex," that where the bicep[ ] attaches to the bone is where the anterior labrum is, and that the multiple shoulder surgeries Plaintiff had put her at risk for further injury, and there it is related. However, he ultimately concluded that it was too speculative for anyone to say whether her pain is coming from the 2013 event, or all related back to May 12, 2007.
 

 Three physicians examined plaintiff, each board certified in orthopedics and specializing in treatment of the shoulder or upper extremities. And each testified that he could not say to a reasonable degree of medical certainty that plaintiff's 2013 diagnosis of proximal biceps tendinitis was caused by her 12 May 2007 compensable injury. Nevertheless, Drs. Barnes and Carroll each testified that the superior labral repair plaintiff underwent in 2007 weakened the complex where her bicep attaches to the shoulder socket and placed plaintiff at a higher risk for injury to the bicep tendon. Thus, this testimony lends support to the presumption that additional medical treatment to plaintiff's right shoulder complex
 
 *275
 
 is directly related to the 12 May 2007 compensable right shoulder injury.
 
 Perez
 
 ,
 
 174 N.C.App. at 135
 
 ,
 
 620 S.E.2d at 292
 
 (establishing a compensable injury raises a presumption that future medical treatment is related to the compensable injury). Therefore, there was sufficient evidence to support the Commission's findings of fact and conclusions of law that the medical treatment of plaintiff's right shoulder
 
 *149
 
 proximal biceps tendinitis was causally related to her 12 May 2007 compensable right shoulder injury. With the burden of proof shifted, defendants failed to present evidence to disprove the causal connection.
 
 See
 

 id.
 
 at 135,
 
 620 S.E.2d at 292
 
 (rebutting the presumption of a causal connection between a compensable injury and future medical treatment is initially the employer's burden). Accordingly, defendants' argument is overruled.
 

 Plaintiff's cross-appeal
 

 II
 
 &
 
 III
 

 On cross-appeal, plaintiff argues that the Commission erred by failing to conclude that defendants were required to
 
 immediately
 
 reinstate disability compensation benefits upon notice that her trial return to work was unsuccessful thus subjecting defendants to sanctions in the form of a late payment penalty, attorney fees, and costs. We agree in part.
 

 Pursuant to the Workers' Compensation Rules of the Industrial Commission, "when compensation for total disability being paid pursuant to
 
 N.C. Gen. Stat. § 97-29
 
 is terminated because the employee has returned to work for the same or a different employer, such termination is subject to the trial return to work provisions of
 
 N.C. Gen. Stat. § 97-32.1
 
 ." Workers' Comp. R. of N.C. Indus. Comm'n 404A(1), 2014 Ann. R. (N.C.) 1275, 1283. Pursuant to General Statutes, section 97-32.1,
 

 an employee may attempt a trial return to work for a period not to exceed nine months. ...
 
 If the trial return to work is unsuccessful, the employee's right to continuing compensation under G.S. 97-29
 
 [ ("Rates and duration of compensation for total incapacity") ]
 
 shall be unimpaired
 
 unless terminated or suspended thereafter pursuant to the provisions of [the Workers' Compensation Act].
 

 N.C. Gen. Stat. § 97-32.1
 
 (2015) (emphasis added);
 
 see also
 

 Burchette v. E. Coast Millwork Distribs., Inc.
 
 ,
 
 149 N.C.App. 802
 
 , 808-09,
 
 562 S.E.2d 459
 
 , 463 (2002) (discussing the statutory authority for ceasing and reinstating disability compensation pursuant to
 
 N.C. Gen. Stat. §§ 97-18.1
 
 and -32.1). "If during the trial return to work period, the employee must stop working due to the injury for which compensation had been paid,
 
 *276
 
 the employee should complete and file with the Industrial Commission a Form 28U[, ('Request that compensation be reinstated') ]...." Workers' Comp. R. 404A(2). "If the employee fails to provide the required certification of an authorized treating physician as specified in [Workers' Comp. R. 404A(2) ], ... the employer or carrier/administrator
 
 shall not be required
 
 to resume payment of compensation."
 

 Id.
 

 404A(3) (emphasis added). However, interpreting
 
 N.C. Gen. Stat. § 97-32.1
 
 , this Court has held that "[t]hough an employee 'should' give notice to an employer of an unsuccessful trial return to work via a Form 28U prior to total disability compensation resuming,
 
 a Form 28U is not required for reinstatement of compensation
 
 ."
 
 Davis v. Hospice & Palliative Care of Winston-Salem
 
 ,
 
 202 N.C.App. 660
 
 , 668,
 
 692 S.E.2d 631
 
 , 637 (2010) (emphasis added) (citing I.C. Rule 404A(3) (2009);
 
 Burchette
 
 ,
 
 149 N.C.App. at 809
 
 ,
 
 562 S.E.2d at
 
 463 );
 
 accord
 

 Jenkins v. Pub. Serv. Co. of N.C.
 
 ,
 
 134 N.C.App. 405
 
 , 411,
 
 518 S.E.2d 6
 
 , 10 (1999) ("If [a] trial return to work is unsuccessful, the employee's right to continuing compensation under G.S. 97-29 [for total incapacity] shall be unimpaired.... To expedite reinstatement of an employee's compensation pending a determination by the Commission of whether an employee's return to work was unsuccessful, the Commission's rules provide that an employee may file a Form 28U 'Request that Compensation be Reinstated.' ... Upon the filing of a properly completed Form 28U, the defendant-employer shall forthwith resume payment of compensation for total disability." (alterations in original) (citations omitted)),
 
 rev'd in part on other grounds
 
 ,
 
 351 N.C. 341
 
 ,
 
 524 S.E.2d 805
 
 (2000).
 

 To the extent that there is a contradiction between General Statutes, section 97-32.1 (stating where "the trial return to work is unsuccessful, the employee's right to continuing compensation ... shall be unimpaired") and Workers' Compensation Rule 404A(3) (stating where an employee fails to file a Form 28U with the Industrial Commission "the employer or carrier/administrator
 
 shall not be required
 
 to resume payment of compensation"), this Court has held that
 
 *150
 
 General Statutes, section 97-32.1 controls.
 
 [2]
 

 See
 

 Davis
 
 ,
 
 202 N.C.App. at 668
 
 ,
 
 692 S.E.2d at
 
 637 (citing
 
 Burchette
 
 ,
 
 149 N.C.App. at 809
 
 ,
 
 562 S.E.2d at
 
 463-64 );
 
 see also
 

 id.
 
 at 669,
 
 692 S.E.2d at 637
 
 ("[E]mployers do not have the right to present evidence before reinstating disability compensation following notice
 
 *277
 
 of an unsuccessful return to work. When an employer receives notice, either through a Form 28U or other means of acquiring actual knowledge, then disability compensation should be reinstated automatically.").
 

 Here, the Commission made the following unchallenged finding of fact:
 

 21. Defendants had notice in September 2013 that the trial return to work was unsuccessful; however, defendants took the position that the condition which rendered Plaintiff unable to work after September 9, 2013 and October 24, 2013 was not causally related to the injury she had sustained at work on May 12, 2007.
 

 The Commission concluded that plaintiff had an unsuccessful trial return to work and that
 

 it would be inconsistent with the policy and intent behind
 
 N.C. Gen. Stat. § 97-32.1
 
 to conclude that Plaintiff is not entitled to further benefits.... Therefore, as a result to the injury of May 12, 2007, plaintiff was temporarily and totally disabled from September 9, 2013 to October 5, 2013, and again from October 24, 2013 to the present and ongoing.
 

 Plaintiff contends that the Commission "should have [further concluded] that ... defendants were obligated to reinstate [plaintiff]'s compensation
 
 immediately
 
 ...." (Emphasis added). In accordance with General Statutes, section 97-32.1 and the opinion issued by this Court in
 
 Davis
 
 , we agree.
 
 See
 
 N.C.G.S. § 97-32.1 ("If the trial return to work is unsuccessful, the employee's right to continuing compensation under G.S. 97-29 shall be unimpaired....");
 
 Davis
 
 ,
 
 202 N.C.App. at 668
 
 ,
 
 692 S.E.2d at 637
 
 ("Total disability compensation must be reinstated under
 
 N.C. Gen. Stat. § 97-32.1
 
 ... as soon as an employer has knowledge that an employee's return to work has been unsuccessful." (citation omitted));
 
 cf.
 

 Jenkins
 
 ,
 
 134 N.C.App. at 411
 
 ,
 
 518 S.E.2d at 10
 
 .
 

 Plaintiff further contends that because defendant failed to automatically reinstate disability compensation after notice that plaintiff's trial return to work was unsuccessful, defendant was required to pay plaintiff an additional ten percent of the outstanding total disability payments at the time of the 3 September 2015 Opinion and Award.
 

 General Statutes, section 97-18, "[i]f any installment of compensation is not paid within 14 days after it becomes due, there shall be added to such unpaid installment an amount equal to ten per centum (10%)
 

 *278
 
 thereof, which shall be paid at the same time as, but in addition to, such installment...."
 
 N.C. Gen. Stat. § 97-18
 
 (g) (2015).
 

 In
 
 Burchette
 
 ,
 
 149 N.C.App. 802
 
 ,
 
 562 S.E.2d 459
 
 , a panel of this Court considered whether the Commission's assessment of a ten percent penalty, pursuant to section 97-18(g) was in error. The facts indicated that the employee suffered a compensable injury, received disability benefits, and subsequently attempted a trial return to work. However, the return to work was unsuccessful. The employer's contention on appeal was the employee's failure to file a Form 28U "reliev[ed] the employer of any responsibility to resume payment of disability compensation."
 
 Id.
 
 at 808,
 
 562 S.E.2d at 463
 
 . The Court panel disagreed.
 

 [O]nce [the defendant-employer] had knowledge that [the plaintiff-employee]'s trial return to work was unsuccessful, they were required to reinstate compensation pursuant to the Form 21
 
 [
 

 3
 

 ]
 
 .... At the time
 
 *151
 
 the trial return to work was unsuccessful, the defendants did not qualify for the exception listed in N.C.G.S. § 97-18.1(b.)
 
 [
 

 4
 

 ]
 
 Defendants' remedy at that point, if they felt plaintiff's refusal to work was unjustified, was to file a Form 24 [ (a request to terminate benefits) ] pursuant to N.C.G.S. § 97-18.1(c). As a result of defendants' failure to follow these procedures, defendants are subject to the ten percent penalty pursuant to N.C.G.S. § 97-18(g).
 

 Id.
 
 at 809,
 
 562 S.E.2d at 463-64
 
 .
 

 *279
 
 Here, in finding of fact 20, the Commission found that following plaintiff's unsuccessful trial return to work, "[d]efendants filed a Form 62, Notice of Reinstatement or Modification of Compensation, indicating that payment of temporary total disability benefits would be reinstated on September 11, 2013" before the form was "pulled and destroyed." In finding of fact 21, the Commission made the following unchallenged statement:
 

 21. Defendants had notice in September 2013 that the trial return to work was unsuccessful; however, defendants took the position that the condition which rendered Plaintiff unable to work after September 9, 2013 and October 24, 2013 was not causally related to the injury she had sustained at work on May 12, 2007.
 

 The record fails to reflect any action by defendants giving notice to plaintiff or the Commission to contest plaintiff's right to compensation in accordance with our General Statutes, section 97-18(c) ("If the employer or insurer denies the employee's right to compensation, the employer or insurer shall notify the Commission, on or before the fourteenth day after it has written or actual notice of the injury ..., or within such reasonable additional time as the Commission may allow, and advise the employee in writing of its refusal to pay compensation on a form prescribed by the Commission."
 
 N.C. Gen. Stat. § 97-18
 
 (c) (2015) ). Defendants simply refused to reinstate plaintiff's disability compensation benefits following notice of plaintiff's unsuccessful trial return to work. Therefore, in consideration of the Commission's findings of fact, including the conclusion that plaintiff's trial return to work was unsuccessful due to her 7 May 2012 compensable injury, we hold that defendants are subject to a penalty of ten percent (10%) on temporary total disability compensation benefits not paid to plaintiff following the end of her trial return to work in accordance with General Statutes, section 97-18(g). We remand this matter to the Commission for entry of an Opinion and Award consistent with this opinion.
 

 Plaintiff further contends that the Commission erred in failing to consider the imposition of sanctions, including attorney fees and costs pursuant to
 
 N.C. Gen. Stat. § 97-88.1
 
 .
 

 "The decision whether to award or deny attorney's fees rests within the sound discretion of the Commission and will not be overturned absent a showing that the decision was manifestly unsupported by reason."
 
 Thompson v. Fed. Express Ground
 
 ,
 
 175 N.C.App. 564
 
 , 570,
 
 623 S.E.2d 811
 
 , 815 (2006) (citation omitted). Under section 97-88.1, "[i]f
 
 *280
 
 the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them."
 
 N.C. Gen. Stat. § 97-88.1
 
 (2015).
 

 We note that in its Opinion and Award, the Commission reasoned that "[d]efendants' defense of this matter was not grounded in unfounded litigiousness and Plaintiff is not
 
 *152
 
 entitled to attorney's fees pursuant to
 
 N.C. Gen. Stat. § 97-88.1
 
 . Thus, the Commission considered the award of attorney fees and costs and denied them, as was within its discretion. Accordingly, this argument is overruled.
 

 REVERSED IN PART AND REMANDED; AFFIRMED IN PART.
 

 Judges STROUD and DIETZ concur.
 

 [1]
 

 In support of this finding, the Commission cited Dr. Barnes testimony: " 'I think it's going to boil down to is I don't know if she hurt it at work, ...' but the prior superior labral repair 'places her at a higher risk of subsequent injuries.' "
 

 [2]
 

 "To make its purpose that the North Carolina Workmen's Compensation Act shall be administered exclusively by the North Carolina Industrial Commission effective, the General Assembly has empowered the said Industrial Commission to make rules,
 
 not inconsistent with this act
 
 , for carrying out the provisions of the act...."
 
 Chaisson v. Simpson
 
 ,
 
 195 N.C.App. 463
 
 , 473,
 
 673 S.E.2d 149
 
 , 158 (2009) (quoting
 
 Winslow v. Carolina Conf. Ass'n
 
 ,
 
 211 N.C. 571
 
 , 579,
 
 191 S.E. 403
 
 , 408 (1937) (internal quotation marks omitted)).
 

 [3]
 

 [A] Form 21 agreement (approved by the Commission) represents an admission of liability by the employer for disability compensation pursuant to the Workers' Compensation Act (the "Act"). [
 
 S
 
 ]ee ... [
 
 Radica v. Carolina Mills
 
 ,
 
 113 N.C.App. 440
 
 , 447,
 
 439 S.E.2d 185
 
 , 190 (1994) ] (Form 21 agreement is an admission by employer of liability, entitling employee to continuing presumption of disability).
 

 Kisiah v. W.R. Kisiah Plumbing
 
 ,
 
 124 N.C.App. 72
 
 , 77,
 
 476 S.E.2d 434
 
 , 436 (1996).
 

 [4]
 

 As cited in
 
 Burchette
 
 , North Carolina General Statutes, section 97-18.1 states that
 

 [a]n employer may terminate payment of compensation for total disability being paid pursuant to G.S. 97-29 when the employee has returned to work for the same or a different employer.... The employer shall promptly notify the Commission and the employee, on a form prescribed by the Commission, of the termination of compensation....
 

 149 N.C.App. at 808
 
 ,
 
 562 S.E.2d at 463
 
 (quoting
 
 N.C. Gen. Stat. § 97-18.1
 
 (1999) ).